In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00038-CV**
_____

**CITY OF DALLAS, Appellant**

**V.**

**CARY "MAC" ABNEY, ET AL., Appellees**

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D150045-C**

**MEMORANDUM OPINION**

This is an interlocutory appeal from the trial court's denial of appellant City of Dallas's (the "City") motion to transfer venue. In two issues, the City contends that the trial court erred in denying its motion to transfer venue pursuant to section 15.003 of the Texas Civil Practice and Remedies Code. Appellee Sabine River Authority of Texas (the "SRA") has filed a motion to dismiss the appeal for lack of jurisdiction or, in the alternative, to abate the appeal pursuant to Texas Rule of

1

Appellate Procedure 27. Because we conclude that we do not have jurisdiction over this interlocutory appeal, we dismiss the appeal for want of jurisdiction.

## I.     Factual Background

In 1981, the City, the SRA, and various electric corporations (the "Corporations"), acting through Texas Utilities Generating Company ("TUGCO"), entered into a Water Supply Contract and Conveyance (the "Agreement"). Under the terms of the Agreement, the SRA, the Corporations, and TUGCO agreed to convey to the City certain rights to the use of water from Lake Fork Reservoir in exchange for the City's agreement to make certain specified payments to the SRA and the Corporations. According to the parties' pleadings, the Agreement contained a renewal provision, which provided that the Agreement would automatically renew for a forty-year term beginning on November 2, 2014, unless the City provided written notice of termination to the SRA by November 1, 2013. The Agreement further provided that if the Agreement was renewed, the amount of compensation that the SRA would be entitled to receive during the renewal term "shall be determined by mutual agreement between the City and the [SRA], taking into account such price as is prevailing in the general area at the time for like contract sales of water of similar quality, quantity and contract period." The Agreement stated that "[i]n the event that the City and the [SRA] are unable to

2

agree upon the amount of such compensation prior to the expiration of each such term, the Texas Water Commission may establish interim compensation to be paid by the City to the [SRA]." Further, the Agreement provided that "if legal action is necessary to enforce or interpret any of the terms and provisions of this Agreement, exclusive venue shall lie in Travis County, Texas."

According to the City's petition, the City provided the SRA with notice of the City's intent to renew the Agreement prior to November 1, 2013. The City and the SRA, however, were unable to reach an agreement on a rate of compensation that the City would pay to the SRA during the Agreement's renewal term. Despite the absence of an agreement on a renewal rate, the SRA's board of directors met on October 9, 2014, and approved a motion to set the amount of compensation to be paid by the City during the renewal term at $0.5613 per 1,000 gallons, "payable on a 'take or pay' basis" for 131,860 acre-feet of water per year, with a price escalator based on the Consumer Price Index. According to the City's allegations, the SRA's executive vice president and general manager notified the City of the renewal rate set by the SRA's board of directors by letter dated October 13, 2014.

On October 30, 2014, the City filed a petition with the Public Utility Commission of Texas ("PUC"), seeking a review of the October 9, 2014 action by the SRA's board of directors and requesting that an interim rate be set for the

3

renewal period pending a final determination of the administrative proceeding. The PUC referred the case to the State Office of Administrative Hearings, and an administrative law judge was assigned to the case. The administrative law judge set an interim rate for the renewal period at $0.5613 per 1,000 gallons on a "take-or-pay" basis, but otherwise abated the administrative proceeding pending a judicial determination of whether the protested rate set by the SRA's board of directors was a rate set pursuant to a written contract.

Following the abatement of the administrative proceeding, the City filed suit against the SRA in Travis County, seeking a declaratory judgment that the renewal rate set by the SRA's board of directors on October 9, 2014, was not a rate set pursuant to a written contract. The SRA filed a plea to the jurisdiction claiming that the doctrine of governmental immunity barred the City's suit against the SRA. The trial court granted the SRA's plea to the jurisdiction and dismissed the Travis County suit for lack of jurisdiction.

On February 13, 2015, the City filed the instant suit in Orange County ("the Orange County suit") against the members of the SRA's board of directors in their official capacities (collectively, the "Director Defendants"). The City did not name the SRA as a defendant in the lawsuit. In its petition, the City alleged that the Director Defendants acted without legal authority when they set the renewal rate

4

for water provided to the City during the Agreement's renewal term. Specifically, the City alleged that the SRA's enabling statute requires, among other things, that the rates set by the SRA's board of directors for the use of water be "reasonable and equitable[.]" *See* Act of Apr. 27, 1949, 51st Leg., R.S., ch. 110, 1949 Tex. Gen. Laws 193, *amended by* Act of May 21, 1973, 63rd Leg. R.S., ch. 238, § 14(o), 1973 Tex. Gen. Laws 557, 559.[1] The City alleged that because the renewal

---

[1] The SRA's enabling statute provides, in relevant part, as follows:

The Board of Directors of the district shall prescribe fees and charges to be collected for the use of water, water connections, hydroelectric service, or other service, which fees and charges shall be reasonable and equitable and fully sufficient to produce revenues adequate to pay, and said Board of Directors shall cause to be paid therefrom:

(1)   all expenses necessary to the operation and maintenance of the improvements and facilities of said district. Such operating and maintenance expenses shall include the cost of the acquisition of properties and materials necessary to maintain said improvements and facilities in good condition and to operate them efficiently, necessary wages and salaries of the district, and such other expenses as may be reasonably necessary to the efficient operation of said improvements and facilities;

(2)   the annual or semi-annual interest as it becomes due upon any bonds issued hereunder payable out of the revenues of said improvements and facilities;

(3)   the amount required to be paid annually into the sinking fund for the payment of any bonds issued hereunder, payable out of the revenues of said improvements and facilities, and to be paid into

5

rate set by the Director Defendants on October 9, 2014, was not reasonable or equitable, the Director Defendants acted outside of their statutory authority when they set that rate. In addition, the City alleged that the terms of the Agreement only permit the renewal rate to be set by agreement of the parties or, if no such agreement is reached, by the PUC.[2] The City alleged that because the Director Defendants unilaterally set the renewal rate without the City's knowledge or agreement and "without going through the PUC[,]" the Director Defendants acted outside of their authority when they set that rate. The City, therefore, sought a declaration from the trial court that the Director Defendants acted *ultra vires* when they set the renewal rate under the Agreement and that the renewal rate approved by the Director Defendants is void. The City also sought a declaration "that the SRA Board members' unilateral action to set rates was in material violation of the Agreement" and asked the trial court to "order the SRA Board Members to

---

the reserve and other funds under the resolution authorizing the issuance of the bonds.

Act of Apr. 27, 1949, 51st Leg., R.S., ch. 110, 1949 Tex. Gen. Laws 193, *amended by* Act of May 21, 1973, 63rd Leg. R.S., ch. 238, § 14(o), 1973 Tex. Gen. Laws 557, 559. For efficiency, we will cite to this statute throughout this opinion as the "SRA Enabling Statute."

[2] In the City's petition, the City alleged the PUC is "the successor agency to the Texas Water Commission with respect to water rates[.]"

6

perform their obligation under the Agreement to approve only rates either set by the PUC or agreed to between the SRA and the City[.]"

All but one of the Director Defendants answered and filed a plea to the jurisdiction in response to the City's claims.[3] In their pleas to the jurisdiction, the Director Defendants claimed that they had acted at all times within their official capacity and with lawful authority as members of the SRA's board of directors and that the doctrine of governmental immunity therefore barred the City's claims against them.

On June 23, 2015, the SRA intervened in the Orange County suit.[4] In its petition in intervention, the SRA asserted a claim for breach of contract against the City, alleging that the Agreement contained an "'open price term'" with respect to

---

[3] The record on appeal contains no responsive pleading filed on behalf of defendant Sharon Newcomer a/k/a Martha Sharon McMullen ("Newcomer").

[4] The City has not moved to strike the SRA's petition in intervention. "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60; *see also Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (explaining that an intervenor is not required to obtain the trial court's permission to intervene; instead, a party who opposes the intervention "has the burden to challenge it by a motion to strike"). "Unless a party opposing an intervention obtains an order striking the plea in intervention, anyone may intervene as a matter of right." *Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 984 S.W.2d 292, 295 (Tex. App.—Fort Worth 1998, no pet.).

7

the price the City was required to pay for water during the Agreement's renewal term. The SRA alleged that because the Agreement contained an open price term, the price for the water provided to the City during the Agreement's renewal term became a reasonable price pursuant to section 2.305 of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code Ann. § 2.305 (West 2009).[5] The SRA alleged that because the renewal rate set by the SRA's board of directors was a reasonable price for the water provided to the City during the renewal term, the City's refusal to pay that rate constituted a breach of the Agreement. The SRA sought monetary damages from the City as a result of the alleged breach, claiming

---

[5] Section 2.305 of the Texas Business and Commerce Code provides, in relevant part, as follows:

> (a)     The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if
>
> > (1)     nothing is said as to price; or
> >
> > (2)     the price is left to be agreed by the parties and they fail to agree; or
> >
> > (3)     the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.

Tex. Bus. & Com. Code Ann. § 2.305(a) (West 2009).

8

that the amount due and owing from the City for water supplied during the Agreement's renewal term totaled $14,068,376 as of June 1, 2015.

On July 17, 2015, the City filed a motion to transfer venue of the SRA's claim in intervention. In its motion, the City specifically denied that venue for the SRA's breach of contract claim is proper in Orange County. The City argued that venue for the SRA's claim is instead proper in Travis County pursuant to section 15.020 of the Texas Civil Practice and Remedies Code or, alternatively, in Dallas County pursuant to section 15.002 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002 (West 2002), § 15.020 (West Supp. 2015). The City argued that because the SRA, as an intervening plaintiff, could not independently establish that venue over its claim in intervention is proper in Orange County, the trial court was required to transfer the SRA's breach of contract claim to Travis County or Dallas County pursuant to section 15.003 of the Texas Civil Practice and Remedies Code. *See id*. § 15.003(a) (West Supp. 2015).

Thereafter, the SRA filed a response to the City's motion to transfer venue, arguing, in effect, that section 15.003 does not apply to the SRA's claim in intervention because the SRA is not a "plaintiff" in this case. Specifically, the SRA argued that because it is "the real party in interest for the [Director Defendants]," the SRA is "effectively the true defendant in [the City's] lawsuit," and its breach of

9

contract claim against the City "is simply a counterclaim by another name." The SRA argued that because its claim against the City is a counterclaim, venue over the claim is proper in Orange County under section 15.062 of the Texas Civil Practice and Remedies Code. *See id.* § 15.062(a) (West 2002). In the alternative, the SRA argued that even if section 15.003 does apply in this case, venue for the SRA's claim is proper in Orange County under section 15.003(a) because: (1) the SRA's intervention is proper under Texas law, (2) maintaining venue over the SRA's claim in Orange County would not unfairly prejudice any other party, (3) there is an essential need to have the SRA's claim tried in Orange County, and (4) Orange County is a fair and convenient venue for all of the parties involved. *See id.* § 15.003(a)(1)-(4).

Following a non-evidentiary hearing, the trial court denied the City's motion to transfer venue without specifying the grounds for its decision. The City then filed a notice of appeal from the trial court's venue order, seeking to invoke this Court's interlocutory jurisdiction under section 15.003(b). *See id.* § 15.003(b). In two issues, the City contends that the trial court erred in denying its motion to transfer venue under section 15.003(a) because the SRA, as an intervening plaintiff, failed to independently establish: (1) that Orange County is a proper venue for its breach of contract claim against the City, or (2) that the requirements

of section 15.003(a)(1) through (4) have been satisfied. The SRA has filed a motion to dismiss the appeal for lack of jurisdiction or, in the alternative, to abate the appeal under Texas Rule of Appellate Procedure 27.

## II.    Appellate Jurisdiction

### A.    Section 15.003 of the Texas Civil Practice and Remedies Code

As a threshold issue, we must determine whether we have jurisdiction over this appeal. Generally, a party may only appeal a final order or judgment. *City of Watauga v. Gordon*, 434 S.W.3d 586, 588 (Tex. 2014). An interlocutory appeal from a non-final order or judgment is permitted only when authorized by statute. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001). As a general rule, a trial court's venue ruling is interlocutory, and "[n]o interlocutory appeal shall lie from the [trial court's venue] determination." Tex. Civ. Prac. & Rem. Code Ann. § 15.064(a) (West 2002). Section 15.003, however, sets forth an exception to this general rule and permits an interlocutory appeal from certain venue rulings. *See id.* § 15.003(b); *see also Union Pac. R.R. Co. v. Stouffer*, 420 S.W.3d 233, 236 (Tex. App.—Dallas 2013, pet. dism'd); *Shamoun & Norman, LLP v. Yarto Int'l Group, LP*, 398 S.W.3d 272, 285-87 (Tex. App.—Corpus Christi 2012, pet. dism'd) (mem. op.). Section 15.003(a) states:

> In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit

11

was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:

(1)     joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;

(2)     maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

(3)     there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

(4)     the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). Subsection (b) of section 15.003 provides that "[a]n interlocutory appeal may be taken of a trial court's determination under Subsection (a) that: (1) a plaintiff did or did not independently establish proper venue; or (2) a plaintiff that did not independently establish proper venue did or did not establish the items prescribed by Subsections (a)(1)–(4)." *Id*. § 15.003(b).

To determine whether jurisdiction exists over this appeal, we must first determine the statutory requirements for bringing an interlocutory appeal under section 15.003(b) and then examine whether those requirements have been

12

satisfied in this case. When we interpret a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). "To determine that intent, we look first to the 'plain and common meaning of the statute's words.'" *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013) (quoting *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)). When the plain language of a statute is unambiguous and yields but one interpretation, our interpretive analysis is at an end. *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 653-54 (Tex. 2013) (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013)).

Under the plain language of the statute, the first requirement for bringing an interlocutory appeal in accordance with section 15.003(b) is that the venue determination that forms the basis of the appeal must be one that was made "under Subsection (a)[.]" Tex. Civ. Prac. & Rem. Code Ann. § 15.003(b); *see also Stouffer*, 420 S.W.3d at 237. Subsection (a) of section 15.003, by its express terms, applies only "[i]n a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise[.]" Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). Therefore, to bring an interlocutory appeal under section 15.003(b), the

plain and unambiguous language of the statute requires that the venue determination that is being appealed must, among other things, have been made in a case involving more than one plaintiff. *See id.* § 15.003(a), (b); *Stouffer*, 420 S.W.3d at 237; *Shamoun & Norman, LLP*, 398 S.W.3d at 285; *see also Counsel Fin. Servs., L.L.C. v. Leibowitz*, No. 13-10-00693-CV, 2011 WL 2674927, *3-5 (Tex. App.—Corpus Christi July 1, 2011, no pet.) (mem. op.); *Anglo Irish Bank Corp. Ltd. v. Ashkenazy & Agus Ventures, LLC*, No. 02-10-00299-CV, 2010 WL 5019416, *1 (Tex. App.—Fort Worth Dec. 9, 2010, no pet.) (mem. op.).

In its motion to dismiss the appeal, the SRA argues that because the City brought its claims against the Director Defendants in their official capacities, the SRA is "the real party in interest" for the Director Defendants. Accordingly, the SRA contends that it should be treated as a defendant, rather than a plaintiff, in this lawsuit. The SRA argues that because it is properly characterized as a defendant, this lawsuit involves only one plaintiff—the City—and section 15.003(b) does not provide jurisdiction over this appeal. In response, the City argues that the SRA intervened as a plaintiff in this case and the lawsuit therefore involves two plaintiffs—the City and the SRA. In furtherance of that position, the City contends that because this is a multiple-plaintiff lawsuit and because the appeal otherwise complies with the requirements of section 15.003, section 15.003(b) provides this

Court with jurisdiction over this appeal. Therefore, to determine our jurisdiction, we must decide whether the SRA, as an intervening party, is properly characterized as a plaintiff or a defendant in this case.

## B.     Characterization of the SRA as a Plaintiff or a Defendant

It is well-established that an intervening party may be characterized as either a plaintiff or a defendant. *In re Ford Motor Co*., 442 S.W.3d 265, 274 (Tex. 2014) ("Intervenors can be characterized as plaintiffs or defendants[.]"). *Compare Perkins v. Freeman*, 518 S.W.2d 532, 534 (Tex. 1974) (treating intervenors as defendants) *and Jenkins v. Entergy Corp*., 187 S.W.3d 785, 797 (Tex. App.—Corpus Christi 2006, pet. denied) (treating intervenors as defendants), *with Noble v. Meyers*, 13 S.W. 229, 230 (Tex. 1890) (characterizing intervenor as plaintiff) *and Welch v. Hrabar*, 110 S.W.3d 601, 608 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (characterizing intervenor as plaintiff). Whether an intervenor is properly characterized as a plaintiff or a defendant "depend[s] on the claims asserted and relief requested by the intervenor." *Ford*, 442 S.W.3d at 274; *accord Perkins*, 518 S.W.2d at 534 (evaluating status of intervenors based on the intervenors' pleadings and the relief requested by the intervenors); *Sec. State Bank v. Merritt*, 237 S.W. 990, 992 (Tex. Civ. App.—Amarillo 1922, no writ) ("Whether

15

an [intervenor] is to be treated as a plaintiff or a defendant would seem to depend on the character of rights asserted and relief asked by him in his plea.").

In *Perkins*, for example, the Texas Supreme Court treated the intervenors as defendants, even though the intervenors sought affirmative relief from the trial court and no claim for affirmative relief had been asserted against them. 518 S.W.2d at 534. In *Perkins*, the paternal grandparents of a child intervened in a child custody suit. *Id.* at 533. The father previously had been granted custody of the child following his divorce from the mother, and the mother filed suit to gain custody. *Id.* The trial court allowed the grandparents and the father to each have six peremptory challenges, despite a rule that only six peremptory challenges in total should be given to all defendants. *Id.* The issue before the Court was whether the grandparents, as intervenors, should be characterized as defendants, thereby limiting the total number of challenges between the grandparents and the father to six. *Id.* The Court noted that the grandparents' petition in intervention alleged that the mother was unfit to have custody of the child. *Id.* at 534. Further, the grandparents made no allegation regarding the father's unfitness. *Id.* The Court ultimately concluded that the grandparents should be characterized as defendants because no antagonism existed between the intervenors and the defendant, the intervenors and the defendant "were united in a common cause of action against

16

the plaintiff," and the intervenors and the defendant "both primarily sought to retain custody of the minor child in the defendant or in the intervenors in the alternative" and to prevent custody from being awarded to the mother. *Id*. The Court concluded that because the intervenors were properly characterized as defendants, the trial court's decision to award six peremptory challenges each to the grandparents and the father gave those parties an unequal advantage that rendered the trial materially unfair to the mother. *Id*.

Subsequently, in *In re Ford Motor Co.*, the Texas Supreme Court again addressed the circumstances under which an intervenor may be characterized as a defendant. 442 S.W.3d at 274-78. In *Ford*, the plaintiff and his brother were involved in a single-vehicle accident in Mexico in which the brother was killed. *Id*. at 268. The plaintiff, a Mexican resident, filed a personal injury suit against the deceased brother's estate in Hidalgo County, Texas, alleging that the brother failed to properly maintain the vehicle and its tires. *Id*. The brother's estate, in turn, filed a third-party claim against Ford, alleging claims for defective design and negligence and seeking damages permitted for survival claims. *Id*. The estate's administrator, the deceased brother's daughter, and two others then intervened in the lawsuit and filed claims against Ford as wrongful-death beneficiaries. *Id*. Soon thereafter, the deceased brother's minor daughter, with her mother acting as next

17

friend and guardian, also intervened as a wrongful-death beneficiary and asserted claims against Ford. *Id*. The claims in intervention mirrored the theories of liability asserted by the estate, but the intervenors sought wrongful-death damages rather than survival damages. *Id*. Thereafter, the plaintiff amended his pleadings to add Ford as a defendant in his personal injury suit. *Id*. Ford moved to dismiss the claims against it under the doctrine of forum non conveniens, but the trial court denied the motion. *Id*. Ford filed a petition for writ of mandamus, claiming that the trial court abused its discretion in denying its motion to dismiss because the intervening wrongful-death beneficiaries were not "plaintiffs" within the meaning of the Texas-resident exception in the forum non conveniens statute, which permitted plaintiffs who are legal residents of Texas to anchor a case in a Texas forum even if the doctrine of forum non conveniens would otherwise favor dismissal. *Id*. The court of appeals denied Ford's request for mandamus relief. *Ford*, 442 S.W.3d at 269.

The Texas Supreme Court also denied Ford's petition for writ of mandamus, concluding that the intervening wrongful-death beneficiaries were properly characterized as plaintiffs and could therefore take advantage of the statutory Texas-resident exception. *Id*. at 278, 284. In reaching this conclusion, the Court was required to determine whether the wrongful-death beneficiaries had intervened

18

as plaintiffs, in which case the Texas-resident exception would apply to preclude dismissal of the claims against Ford, or as defendants filing third-party claims, in which case the Texas-resident exception would not apply. *Id.* at 274-78. In analyzing this issue, the Court explained that "defendants are not just parties sued by a plaintiff." *Id.* at 274. "Intervenors can also be characterized as defendants[,]" even though they "are not traditional defendants in the sense that they are involuntarily drawn into litigation to defend against a claim[.]" *Id.* at 270 n.13 & 274. The Court explained that whether an intervenor is properly characterized as a plaintiff or a defendant "depend[s] on the claims asserted and relief requested by the intervenor." *Id.* at 274. The Court acknowledged that "[a]t the stage of intervention, most intervenors inherently resemble a plaintiff: the intervenor files an affirmative claim, and, at least at the point of intervention, no parties are directly suing the intervenor." *Id.* at 275. However, the mere fact that an intervenor has filed a claim for affirmative relief and is not defending against a claim does not automatically mean that the intervening party should be designated as a plaintiff. *Id.* at 274-75. Instead, when an intervenor seeks affirmative relief and is not defending against a claim, courts "should operate under a presumption that the intervenor is a plaintiff." *Id.* at 275. However, such an intervenor should be characterized as a defendant when: (1) direct antagonism exists between the

19

intervenor and the plaintiff, (2) the intervenor is closely aligned with the defendant, and (3) equitable factors weigh in favor of treating the intervenor as a defendant. *Id.*

Applying this test, the Court concluded that the intervening wrongful-death beneficiaries were properly characterized as plaintiffs, rather than defendants. *Id.* at 276-78. The Court first concluded that the interests of the plaintiff and the intervenors were not directly adverse. *Id.* at 276. The intervenors did not seek affirmative relief from the plaintiff, and the intervenors' wrongful-death claims against Ford posed no threat to the plaintiff's interests. *Id.* at 276. Further, the plaintiff, who had sued both the estate and Ford, posed only an indirect threat to the interests of the intervenors in that if the plaintiff's claim against the estate was ultimately successful, it could potentially reduce the percentage of responsibility apportioned to Ford, which was the only party from whom the intervenors sought recovery. *Id.* Second, the Court concluded that the interests of the defendant estate and the intervenors were not closely aligned because the estate sought damages permitted for survival claims, while the intervenors sought damages typical of wrongful-death claims. *Id.* at 277. The Court explained that "[t]he evidence needed to weigh the merits of these relative claims will vary, and thus they will not be treading the same path to recovery." *Id.* Finally, the Court concluded that equitable

20

factors favored characterizing the intervenors as plaintiffs because treating the intervenors as defendants who had filed third-party claims would have "arbitrary and illogical results" and would allow the actions of other litigants to control the intervenors' ability to take advantage of the Texas-resident exception. *Id*. The Court also noted that if the intervenors were designated as defendants who filed third-party claims and if the claims against Ford were dismissed for forum non conveniens, the estate would have to litigate in Mexico, but the intervenors could still file suit in Texas since they would no longer be third-party plaintiffs. *Id*.

In the present case, the SRA, as an intervening party, has asserted a claim for affirmative relief against the City, and no party has filed a claim directly against the SRA. Therefore, we apply the three-factor test set forth in *Ford* to determine whether the SRA has intervened as a plaintiff or a defendant in this case.[6] *See id*. at 275-277.

### 1. Direct Antagonism Exists Between the City and the SRA

Although the City has not sued the SRA directly in this lawsuit, it has alleged *ultra vires* claims against the Director Defendants in their official capacities as members of the SRA's board of directors. As a general rule,

---

[6] We express no opinion regarding the merits of the claims asserted by any of the parties in this case. We base our analysis on the allegations contained in the parties' live pleadings at the time this appeal was filed.

"'[s]overeign immunity protects the State from lawsuits for money damages.'" *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002)). Political subdivisions of the State are entitled to this immunity—referred to as governmental immunity—unless it has been waived.[7] *Id.* However, governmental immunity does not bar an action to determine or protect a party's rights against a state official who has acted without legal or statutory authority. *S.W. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009)). This type of suit is referred to as an "*ultra vires*" suit. *See id.* For a suit to fall within the *ultra vires* exception to sovereign immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. "Conversely, if the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity." *Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 (Tex. App.—Austin 2010, no pet.); *accord Heinrich*, 284 S.W.3d at 372.

---

[7] The SRA is a political subdivision of the State. *See* Act of Apr. 27, 1949, 51st Leg., R.S., ch. 110, § 1, 1949 Tex. Gen. Laws 193, 194.

In *Heinrich*, the Texas Supreme Court identified the proper defendant in an *ultra vires* suit. 284 S.W.3d at 372-73. The Court explained that because "'the acts of officials which are not lawfully authorized are not acts of the State,'" an *ultra vires* suit cannot be brought against the State and its subdivisions, which remain immune from suit. *Id.* at 373 (quoting *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945)). Instead, an *ultra vires* suit must be brought against the state actor in his or her official capacity. *Id.* The Court noted, however, that although an *ultra vires* suit must be brought in name against the state actor, "the suit is, for all practical purposes, against the [S]tate." *Id.*; *see also Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011) ("A government employee has the same immunity from suit against him in his official capacity as his employer, unless he has acted *ultra vires*. Even then, the suit is, for all practical purposes, against the [S]tate.") (internal quotations and footnotes omitted). This is because a suit against a state actor in his or her official capacity "is merely 'another way of pleading an action against the entity of which [the official] is an agent.'" *Heinrich*, 284 S.W.3d at 373 (quoting *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007)); *accord De Mino v. Sheridan*, 176 S.W.3d 359, 365 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("It is a well-established and generally accepted principle of law that a suit against a government employee in

23

his official capacity is, in all respects, a suit against the governmental unit."). In such a case, the governmental official is the named defendant, but the governmental entity is "'the real party in interest[.]'" *Koseoglu*, 233 S.W.3d at 844 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Further, because an *ultra vires* suit is, for all practical purposes, against the State, the remedies available for such a claim must be limited so that the State's immunity is not implicated. *Heinrich*, 284 S.W.3d at 374. Accordingly, a claimant who successfully establishes an *ultra vires* claim is entitled only to prospective declaratory or injunctive relief, as opposed to retroactive relief. *Id*. at 374-76.

In the present case, the City filed its alleged *ultra vires* claims solely against the Director Defendants. However, because the City sued the Director Defendants in their official capacities as members of the SRA's board of directors, the City's suit is, for all practical purposes, against the SRA. *See Bailey*, 332 S.W.3d at 401; *Heinrich*, 284 S.W.3d at 373. In its petition, the City alleges that the Director Defendants acted without legal or statutory authority when they purported to set the rate that the City must pay for water during the Agreement's renewal period. Specifically, the City alleges that the SRA Enabling Statute requires all rates for the use of water set by the SRA's board of directors to be "reasonable and equitable[.]" *See* SRA Enabling Statute, § 14(o). The City contends, in part, that

24

because the renewal rate set by the Director Defendants is neither reasonable nor equitable, the Director Defendants acted outside of their statutory authority when they set that rate. Accordingly, the City seeks, among other things, a declaration that the Director Defendants acted *ultra vires* when they purported to set the renewal rate under the Agreement on October 9, 2014, and that such rate is therefore void.

The SRA, on the other hand, has asserted a breach of contract claim directly against the City, seeking to enforce the renewal rate set by the Director Defendants as a legally binding term of the Agreement. According to the SRA's allegations, the Agreement does not establish a specific price for water provided to the City during the renewal period, but instead leaves the renewal rate to be agreed upon by the parties. The SRA alleges that because the parties failed to reach an agreement on a renewal rate, the Agreement contains an "'open price term'" for water provided to the City during the renewal period pursuant to section 2.305 of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code Ann. § 2.305. The SRA contends that the Director Defendants were therefore permitted under section 2.305 to set a price that constituted a reasonable price for water during the renewal period. *See id.* The SRA contends that because the renewal rate approved by the Director Defendants—$0.5613 per 1,000 gallons—is a reasonable rate for

25

water provided to the City during the renewal period, the City's refusal to pay that rate constitutes a breach of the Agreement. The SRA seeks as damages "all amounts due and owing from Dallas under the terms of the Agreement, as renewed at a rate of $0.5613/1,000 gallons of raw water[,]" which, the SRA contends, totaled $14,068,376 as of June 1, 2015.

It is evident from the parties' pleadings that the interests of the City and the SRA in this case are in significantly more tension than the interests of the plaintiff and the intervenors in *Ford*. Unlike the intervenors in *Ford*, whose interests posed no threat to the plaintiff, the SRA has filed a claim for affirmative relief directly against the City. Further, the City has filed claims for declaratory and injunctive relief that, although asserted in name against the Director Defendants, are, for all practical purposes, against the SRA. *See Bailey*, 332 S.W.3d at 401; *Heinrich*, 284 S.W.3d at 373. In its claim for breach of contract against the City, the SRA seeks to establish that the renewal rate set by the Director Defendants constitutes a reasonable rate for water provided to the City during the Agreement's renewal period and that the renewal rate is therefore a valid rate that is enforceable against the City as a legally binding term of the Agreement. This position is directly contrary to the position taken by the City, which seeks a declaration that the very same renewal rate is unreasonable, inequitable, and void. To the extent the SRA

successfully establishes that the renewal rate is a reasonable rate, the City's claim for declaratory relief based on the unreasonableness of the renewal rate will fail. Conversely, if the City successfully proves that the renewal rate is unreasonable, the SRA's breach of contract claim seeking to enforce the same rate as a valid and reasonable rate under the Agreement will fail. Thus, unlike the situation presented in *Ford*, one party can only prevail at the expense of the other with respect to these particular claims. We therefore conclude that the interests of the City and the SRA are in sufficiently direct opposition to justify treating the SRA as a defendant in this case. *See Ford*, 442 S.W.3d at 276; *see also Perkins*, 518 S.W.2d at 534; *Anglo Irish Bank Corp.*, 2010 WL 5019416, at \*2. The first factor under *Ford* therefore favors characterizing the SRA as a defendant.

### 2. The SRA Is Closely Aligned with the Director Defendants

We next examine whether the interests of the SRA are closely aligned with those of the Director Defendants. *See Ford*, 442 S.W.3d at 275. The City has asserted its *ultra vires* claims directly against the Director Defendants, seeking to declare the actions of the Director Defendants void and to restrain the Director Defendants from engaging in certain specified conduct that allegedly falls outside of their legal authority. However, as noted, the City's *ultra vires* claims have been asserted against the Director Defendants in their official capacities. Therefore, the

27

City's claims are, for all practical purposes, against the SRA, which is the real party in interest with respect to such claims. *See Bailey*, 332 S.W.3d at 401; *Heinrich*, 284 S.W.3d at 373. Any permissible prospective declaratory or injunctive relief that the City might obtain against the Director Defendants as a result of its *ultra vires* claims will be binding on both the Director Defendants and the SRA. *See Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App.—Austin 2013, no pet.); *Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 920 (Tex. App.—Austin 2010, pet. denied); *see also De Los Santos v. City of Robstown*, No. 13-11-00278-CV, 2012 WL 6706780, *6 (Tex. App.— Corpus Christi Dec. 13, 2012, no pet.) (mem. op.). Therefore, both the Director Defendants and the SRA share a common interest in defeating the City's claims.

Further, a review of the pleadings indicates that the Director Defendants' interests are aligned with those of the SRA in connection with the SRA's claim for affirmative relief against the City. As noted, the City alleges, among other things, that the Director Defendants acted outside of their authority under the SRA Enabling Statute when they set an unreasonable and inequitable renewal rate. In response to the City's *ultra vires* claims, the Director Defendants have filed general denials and pleas to the jurisdiction, asserting, among other things, that the Director Defendants acted at all times with lawful authority as members of the

28

SRA's Board of Directors and seeking dismissal of the City's claims on the basis of immunity. In asserting that they acted at all times with lawful authority, the Director Defendants necessarily take the position that they acted in accordance with their statutory authority under the SRA Enabling Statute when they set the renewal rate. Because the SRA Enabling Statute requires that the rates set by the SRA's board of directors for the use of water be "reasonable and equitable[,]" the Director Defendants' contention that they acted at all times with lawful authority necessarily entails the assertion that the renewal rate set by the Director Defendants is a reasonable rate. *See* SRA Enabling Statute, § 14(o). Similarly, the SRA asserts in its breach of contract claim against the City that the renewal rate set by the Director Defendants constitutes a reasonable rate for water provided to the City during the renewal period in accordance with section 2.305 of the Texas Business and Commerce Code. The SRA alleges that because the renewal rate set by the Director Defendants is reasonable, it effectively filled the gap created by the alleged open price term for the renewal period contained in the Agreement and is enforceable against the City as a legally binding term of the Agreement. Accordingly, both the SRA and the Director Defendants share the same goal of obtaining a finding that the renewal rate set by the Director Defendants is a

reasonable rate in order to prevail on their respective claims and defenses in this case.

Because the Director Defendants and the SRA share common interests in defeating the City's *ultra vires* claims and establishing that the renewal rate set by the Director Defendants is reasonable and valid, and because the pleadings on file reflect no antagonism between the Director Defendants and the SRA, we conclude that the interests of the Director Defendants and the SRA are closely aligned. *See Perkins*, 518 S.W.2d at 534; *Anglo Irish Bank Corp.*, 2010 WL 5019416 at *2. Accordingly, the second factor under *Ford* supports characterizing the SRA as a defendant in this case. *See Ford*, 442 S.W.3d at 275.

### 3. Equitable Factors Favor Treating the SRA as a Defendant

The last factor under *Ford* considers whether equitable factors weigh in favor of treating the intervenor as a defendant. *See id.* at 275. By choosing to initiate an *ultra vires* suit in Orange County against the Director Defendants in their official capacities as members of the SRA's board of directors, the City effectively chose to initiate a suit in Orange County that is, for all practical purposes, against the SRA. *See Bailey*, 332 S.W.3d at 401; *Heinrich*, 284 S.W.3d at 373. Assuming that the SRA's and the City's claims are not otherwise barred on

jurisdictional grounds,[8] it would not be inequitable for the City to have to defend against claims asserted by the SRA arising out of the same transaction or occurrence that is the subject matter of the City's claims in the same forum. Further, given the similarity of the claims and issues that would necessarily be litigated in each case, characterizing the SRA as a plaintiff and transferring its claim to a different county would also likely result in the duplication of testimony by both lay and expert witnesses, increased costs and expenses for all parties involved, and a waste of valuable judicial resources. We therefore conclude that equitable factors weigh in favor of treating the SRA as a defendant in this case. *See Perkins*, 518 S.W.2d at 534; *cf. Ford*, 442 S.W.3d at 277.

Based on the foregoing, all three factors under *Ford* support characterizing the SRA as a defendant in this case. We therefore conclude that the SRA, as an intervening party, is properly characterized as a defendant in this case even though it has asserted a claim for affirmative relief and no party has filed a claim directly against it. *See Ford*, 442 S.W.3d at 275-78; *see also Perkins*, 518 S.W.2d at 534; *Anglo Irish Bank Corp.*, 2010 WL 5019416 at *2. Accordingly, this is not "a suit in

---

[8] As noted, the Director Defendants have filed pleas to the jurisdiction, seeking dismissal of the City's *ultra vires* claims on the basis of governmental immunity. Those pleas are currently pending before the trial court. Further, the City appears to argue in its briefing on appeal that the PUC has exclusive, or at least primary, jurisdiction to set the rate for the renewal term in this case and that the SRA's claim for breach of contract should therefore be dismissed or abated.

which there is more than one plaintiff," and section 15.003(b) of the Texas Civil Practice and Remedies Code does not apply. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a), (b). Because no applicable statute allows for an interlocutory appeal from the trial court's venue determination in this case, we dismiss this appeal for want of jurisdiction.

DISMISSED FOR WANT OF JURISDICTION.

_____
CHARLES KREGER
Justice

Submitted on May 4, 2016
Opinion Delivered June 9, 2016

Before Kreger, Horton, and Johnson, JJ.