Opinion issued April 16, 2020



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-19-00444-CV

_____

**BRYAN COLLIER, Appellant**

**V.**

**BRYAN SUHRE, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 92053-1**

---

# O P I N I O N

Appellant, Bryan Collier, Executive Director of Texas Department of Criminal Justice ("TDCJ"), challenges the trial court's order denying his plea to the jurisdiction in the suit brought against him by appellee, Bryan Suhre, a TDCJ inmate.

In one issue, Collier contends that the trial court erred in denying his plea because Suhre failed to plead that Collier acted without legal authority or failed to perform a purely ministerial act. We affirm the trial court's order.

## Background

Suhre is currently housed at the Ramsey 1 Unit. On June 5, 2017, Suhre sued Collier and several other TDCJ officials[1] seeking declaratory and injunctive relief pursuant to the Uniform Declaratory Judgment Act.[2]

In his suit, Suhre alleged that the Ramsey 1 Unit consists of approximately eight wings and that each wing has an average population of 140 offenders. He alleged that the offenders are housed in seventy cells, with two offenders to a cell, and contain two metal beds, two lockers, a toilet, and a sink in a forty-five square foot area. Suhre sought a declaration that

> the defendants are currently causing the overcrowding conditions on the Ramsey 1 Unit: (1) by stopping the continuous ingress and egress by locking the doors during waking hours forcing offenders to stand in an area offering approximately 7.5 square feet each; (2) by not building the dayroom space required onto each wing of the unit to provide the additional square footage required for each offender; (3) or in an alternate issue a Declaration that the conditions detailed and outlined in

---

[1] In addition to Collier, Suhre named Leonard Echessa, Regional III Director, Michael Butcher, Senior Warden of the Ramsey I Unit, and Richard Babcock, Assistant Warden of the Ramsey 1 Unit, as defendants. None of these individuals is a party to this appeal.

[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–37.011.

the David Ruiz Memorandum agreement are binding upon the defendants.[3]

To his pleading, Suhre attached a copy of a memorandum agreement from a previous prison litigation lawsuit and his Step 1 and Step 2 grievance forms.[4]

On October 18, 2017, Collier and Michael Butcher, then Senior Warden of the Ramsey 1 Unit, filed a plea to the jurisdiction seeking dismissal of Suhre's petition on the basis of sovereign immunity. In their plea, they alleged

> Suhre claims that the Defendants are not in compliance with stipulations entered in *Ruiz v. Johnson*, Civil Action No. H-78-987, United States District Court for the Southern District of Texas, Houston Division. However, a final judgment dismissing *Ruiz* was entered on June 17, 2002 (Exhibit 1). Therefore, the Defendants do not have a ministerial duty based upon *Ruiz*. Suhre has failed to delineate any ministerial duty to which the Defendants are noncompliant. Consequently, they are not acting *ultra vires* and are therefore entitled to sovereign immunity and the dismissal of Suhre's petition.
>
> Regardless, the offenders at the Ramsey 1 Unit are not being subject to overcrowding. Recently, an electronic locking system was installed on the cell doors and offenders' ingress and egress to and from their cells changed to hourly, which is in compliance with TDCJ policy. The

---

[3] In his petition, Suhre alleged that, as a result of federal rulings in *Ruiz v. Procunier*, Civil Action No. H-78-987-CA, TDCJ officials and a class of inmates entered into a memorandum agreement in 1985 (the "Ruiz memorandum"), which provided, in relevant part: "[T]he parties have reached the following agreement with respect to the provision of dayroom space in certain cellblocks at the . . . Ramsey I Unit. . . . In lieu of constructing additional dayroom space at the Ramsey I Unit, defendants shall effect the following procedures and improvements with respect to all general population cellblocks: . . . 3. All prisoners shall have continuous ingress and egress from their cells, and shall be permitted to lock and unlock their own cells, except during the hours all cells are locked for sleeping."

[4] Collier does not contend that Suhre failed to exhaust his administrative remedies prior to filing suit. *See* TEX. CIV. PRAC. & REM. CODE §14.005.

3

common areas contain benches and tables for offenders to use. If none are available, they can walk around the common area, sit on the floor or go back to their cells when allowed, cells which contain[] televisions for use during daylight hours. During high traffic time, such as meals, offenders such as Suhre are moved as efficiently as possible, with security and safety as a first concern [Exhibit 2].

To their plea, they attached a copy of a 2002 final judgment in *Ruiz v. Johnson* and Butcher's affidavit, which included a copy of a TDCJ security memorandum regarding new policies and procedures related to offender cell ingress and egress effective June 15, 2017.

On December 1, 2017, Suhre filed a response to the plea to the jurisdiction. Suhre asserted that, even if the trial court found that it had no jurisdiction due to the 2002 judgment in *Ruiz*, it had jurisdiction under the ultra vires exception to the general bar of sovereign immunity. Specifically, he alleged that the defendants were in violation of Texas Administrative Code sections 259.430 and 261.330, which state in part, "All single cells, multiple occupancy cells, and dormitories shall be provided with day rooms." Suhre asserted that there is no policy in place for day rooms at the Ramsey 1 Unit, the "run" is not a day room but rather a common area that is crowded when the doors are locked, and, contrary to defendants' allegations, inmates are not allowed to sit on the floor and are subject to disciplinary action if they do so.

On January 5, 2018, Suhre filed a motion to dismiss Butcher, Babcock, and Echessa and substitute the current TDCJ officials in those positions. On May 7, 2018, the trial court granted Suhre's motion.

4

On October 4, 2018, Suhre filed a supplemental petition for declaratory judgment alleging, among other things, that the defendants failed to provide a day room and adequate cell space as required by sections 261.134 and 261.136 of the Texas Administrative Code. Suhre alleged that the defendants' actions fall within the ultra vires exception to governmental immunity.

On May 29, 2019, the trial court entered an order denying Collier's plea to the jurisdiction. This interlocutory appeal followed.

## Discussion

In his sole issue, Collier contends that the trial court erred in denying his plea to the jurisdiction because Suhre's claims for declaratory and injunctive relief are barred by governmental immunity. Specifically, Collier argues that Suhre failed to plead that Collier, as Executive Director of TDCJ, acted without legal authority or failed to perform a purely ministerial act and, therefore, Suhre's allegations do not come within the ultra vires exception to governmental immunity.

### A. Plea to the Jurisdiction

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A government actor's claim of immunity from suit is a challenge to the district court's subject matter jurisdiction. *See Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016); *Tex. Dep't of Parks & Wildlife v.*

5

*Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). The existence of subject matter jurisdiction is a question of law that we review de novo. *Hous. Belt*, 487 S.W.3d at 160.

In support of a plea to the jurisdiction asserting governmental immunity, a defendant may challenge the plaintiff's pleadings or it may challenge the existence of jurisdictional facts. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). "When a plea to the jurisdiction challenges the pleadings," as here, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (quoting *Miranda*, 133 S.W.3d at 226). The plaintiff bears the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

In reviewing a plea to the jurisdiction, we construe the pleadings liberally in favor of the pleader, take all factual assertions as true, and look to the pleader's intent. *See City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015) (per curiam). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28. If the pleadings are not sufficient to demonstrate jurisdiction, an opportunity to re-

plead should be given unless the pleadings affirmatively negate jurisdiction. *See Hous. Belt*, 487 S.W.3d at 160 (citing *Miranda*, 133 S.W.3d at 226–27).

**B. Sovereign Immunity and the Ultra Vires Exception**

Sovereign immunity protects the State from being sued, and from liability for money damages, unless the immunity has been waived. *See Heinrich*, 284 S.W.3d at 369–70 (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)). Absent waiver, political subdivisions of the state are also entitled to immunity, which is referred to as governmental immunity. *See Reata Constr. Corp.*, 197 S.W.3d at 374. Government officials sued in their official capacities generally have the same immunity as their employer. *See Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011).

The Uniform Declaratory Judgment Act ("UDJA") is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE § 37.002(b). It provides that "[a] person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the . . . statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id*. § 37.004(a). The UDJA, however, "does not enlarge

a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *Heinrich*, 284 S.W.3d at 370.

Although the UDJA is not a general waiver of immunity, it does waive immunity for certain claims. *See id.* § 37.006(b); *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). In particular, claims brought under the UDJA for declaratory or injunctive relief against actions taken by a governmental official beyond his discretion or without legal authority, known as ultra vires actions, do not implicate governmental immunity. *See Hous. Belt*, 487 S.W.3d at 158. In other words, if an act is ultra vires, it is done outside of the powers and responsibilities of the State, and a challenge to the act is not a challenge to the State and its officers in the performance of their duty. *See Heinrich*, 284 S.W.3d at 372. An official who commits an ultra vires act is not immune from suit because "[a] state official's illegal or unauthorized actions are not acts of the State." *Id.* at 370 (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997)).

To fall within the ultra vires exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Hous. Belt*, 487 S.W.3d at 161 (quoting *Heinrich*, 284 S.W.3d at 372). "Ministerial acts are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of

8

discretion or judgment.'" *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)). Discretionary acts, on the other hand, require the exercise of judgment and personal deliberation. *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004). "[U]ltra vires suits do not attempt to exert control over the state—they attempt to reassert the control of the state." *Heinrich*, 284 S.W.3d at 372. Stated differently, these suits do not seek to alter government policy but rather to enforce existing policy. *Id.* "[I]t is clear that suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity[.]" *Id.*

### C. Analysis

Collier contends that Suhre has failed to articulate a ministerial duty with which Collier is noncompliant. In support of his contention, Collier asserts that Suhre's claim that Collier is not in compliance with stipulations entered in *Ruiz v. Johnson* fails because the district court entered a final judgment dismissing *Ruiz* and, therefore, Collier does not have a ministerial duty based upon *Ruiz*. Suhre contends that Collier mischaracterizes his claim. Suhre states that his claim is not that Collier has a ministerial duty based on *Ruiz* but, rather, based on the memorandum agreement that emanated from the *Ruiz* decision. In the alternative, Suhre argues that Collier acted ultra vires because he violated his statutory duty to build a day

9

room at the Ramsey 1 Unit as mandated by Texas Administrative Code sections 259.430 and 261.330. We address Suhre's alternative argument below.

Section 259.430, entitled "Day Rooms," sets forth new minimum security design, construction, and furnishing requirements and provides as follows:

> All single cells, multiple occupancy cells, and dormitories shall be provided with day rooms. Separation cells, violent cells, holding cells, and medical cells are exempt from this requirement. Day rooms shall accommodate no more than 48 inmates. Based on the design capacity of the cells served, the day rooms shall contain: not less than 40 square feet of clear floor space for the first inmate plus 18 square feet of clear floor space for each additional inmate; a sufficient number of toilets, lavatories, and showers as approved by the [Texas Commission on Jail Standards], mirrors, seating, and tables. A utility sink should be provided. Day rooms may be contiguous with inmate living areas provided that space requirements for living areas and day rooms are met. Convenient electrical receptacles circuited with ground fault protection shall be provided.

TEX. ADMIN. CODE § 259.430. Section 261.330, also entitled "Day Rooms," sets forth existing minimum security design, construction, and furnishing requirements and provides as follows:

> All single cells, multiple occupancy cells, and dormitories shall be provided with day rooms. Separation cells, violent cells, holding cells, and medical cells are exempt from this requirement. Day rooms shall be designed for no more than 24 inmates, except direct supervision day rooms may be designed for up to 48 inmates. Based on the design capacity of the cells served, the day rooms shall contain not less than 40 square feet of floor space for the first inmate plus 18 square feet of floor space for each additional inmate; adequate toilets, lavatories, mirrors, showers, seating, and tables. A utility sink should be provided. Day rooms may be contiguous with inmate living areas provided that space requirements for living areas and day rooms are met. Convenient

10

electrical receptacles circuited with ground fault protection should be provided.

*Id.* § 261.330. Section 253.1 defines "day room" as "[a] space within or adjacent to single cells, multiple occupancy cells, and dormitories specifically for inmate day time activities." *Id.* § 253.1(9).

Suhre alleges that there are no day rooms in the Ramsey 1 Unit and that the "run" is not a day room but rather a common area. Collier does not dispute Suhre's assertion that the Ramsey 1 Unit lacks day rooms. Indeed, Collier completely fails to address Suhre's claims based on the Texas Administrative Code and the words "day room" do not appear in his briefing. Rather, Collier contends that the inmates are not subject to overcrowding and that they may use the common areas.

The first sentence of sections 259.430 and 261.330 states: "All single cells, multiple occupancy cells, and dormitories shall be provided with day rooms." TEX. ADMIN. CODE §§ 259.430, 261.330. "Use of the word 'shall' in a statute evidences the mandatory nature of a duty imposed." *City of Hous. v. Hous. Mun. Employees Pension Sys.*, 549 S.W.3d 566, 582 (Tex. 2018*)*; *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015); *Akhtar v. Leawood HOA, Inc.*, 508 S.W.3d 758, 764 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Moreover, the statute itself defines "shall" as "[m]andatory and required for compliance." TEX. ADMIN. CODE § 253.1(28); *cf.* § 253.1(21) (defining "may" as [p]ermissive or optional"), § 253.1(30) (defining "should" as "[r]ecommended but not required for

11

compliance"). Sections 259.430 and 261.330 impose a purely ministerial duty to provide day rooms and Collier, as TDCJ Executive Director, has no discretion in determining whether to provide them. *See Sw. Bell Tel.*, 459 S.W.3d at 588–89 (concluding that county commissioners acted ultra vires in refusing to comply with statute requiring county flood control district to be responsible for costs of relocating telecommunications utility's facilities during flood control project and, thus, commissioners did not have governmental immunity to utility's action seeking declaratory judgment and prospective relief); *see also Tex. Racing Comm'n v. Marquez*, No. 03-09-00635-CV, 2011 WL 3659092, at *5 (Tex. App.—Austin Aug. 19, 2011, no pet.) (mem. op.) (concluding director did not have discretion to not docket administrative appeal where relevant administrative code stated: "If after a reasonable time the proceeding cannot be settled through agreement, the executive secretary shall refer the matter to SOAH.").

We emphasize that we do not determine the merits of Suhre's claims at this stage—only that the pleadings and the evidence raise a fact issue as to whether the actions of Collier, as TDCJ's Executive Director, were ultra vires in contravention of his ministerial duty under Texas Administrative Code sections 259.430 and 261.330. We conclude that the trial court has subject matter jurisdiction over Suhre's suit against Collier, and that it properly denied Collier's plea to the jurisdiction. *See Hous. Belt*, 487 S.W.3d at 169 (stating plaintiff need only allege government official

acted outside his discretion by using unreliable or dissimilar method in property classification to demonstrate court's jurisdiction; court need not conclusively decide method was dissimilar or unreliable on plea to jurisdiction); *Heinrich*, 284 S.W.3d at 378 (noting that if jurisdictional evidence creates a fact question, trial court cannot grant plea to jurisdiction and issue must be resolved by factfinder). Accordingly, we overrule Collier's issue.

## Conclusion

We affirm the trial court's May 29, 2019 order denying Collier's plea to the jurisdiction.


Russell Lloyd
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.