# IN THE SUPREME COURT OF TEXAS

═══════════

No. 20-0134

═══════════

In re City of Galveston, Texas, Relator

═══════════

On Petition for Writ of Mandamus

═══════════

**Argued February 4, 2021**

Justice Bland delivered the opinion of the Court, in which Chief Justice Hecht, Justice Guzman, Justice Lehrmann, Justice Boyd, Justice Devine, Justice Busby, and Justice Huddle joined, and in which Justice Blacklock joined except as to Part III.B.

Justice Blacklock filed a concurring opinion.

Government Code Chapter 2260 establishes a mediation process for certain disputes between state agencies and their contractors. If mediation fails, then a contractor may request that the state agency refer the contractor's claim to the State Office of Administrative Hearings for an administrative law judge to hear it. The chapter does not waive the State's sovereign immunity, but the contractor may use the judge's findings and conclusions to seek payment of the claim through legislative appropriation. Upon the state agency's receipt of notice of a claim brought under the chapter, the agency "shall refer the claim" to SOAH.[1]

In this case, the City of Galveston asserts that Chapter 2260 applies to its dispute with the General Land Office, but that Commissioner George P. Bush, head of the office, refuses to refer

_____

[1] Tex. Gov't Code § 2260.102(c).

the City's claim to SOAH. The City asks that we exercise our original mandamus jurisdiction over state officials to compel Commissioner Bush to refer the claim.

The City's dispute with the Land Office arises from a block grant contract that required the City to administer federal disaster relief funds. The City hired a private contractor to perform some of this work. The private contractor later sued the City for amounts it claimed the City owed it under their contract. The City settled with the private contractor and now seeks reimbursement from the Land Office for the settlement amount that the City paid.

As a part of settling the private contractor's suit, however, the City agreed not to sue Commissioner Bush in "any related proceeding." This case is a related proceeding. Accordingly, we decline to issue mandamus relief to compel Commissioner Bush to refer the City's claim.

**I**

Hurricane Ike hit the City of Galveston in September 2008. The United States Department of Housing and Urban Development provided disaster relief funds to the State, which in turn allocated some of these funds to the City to administer through a block grant contract. The City contracted with a private entity, CDM Smith, to manage a construction program for residential housing. The City's contract with CDM Smith provided that the City would certify CDM Smith's application for payment from State funds, initially to be disbursed by the Texas Department of Housing and Community Affairs. Two years into the contract, the Governor transferred responsibility for disbursement of these funds to the General Land Office.

The City's contract with CDM Smith expired in 2011. A dispute regarding payment and the proper certification procedure for the work arose among CDM Smith, the City, and the Land Office. The City claimed that the Land Office bore ultimate responsibility for paying CDM. The Land Office responded that the City had failed to properly certify CDM Smith's work.

2

CDM Smith went unpaid, and it sued the City in Galveston County in 2013 for breach of contract. Meanwhile, the Land Office sued the City and CDM Smith in Travis County, seeking a declaratory judgment to limit its liability. The City counterclaimed against the Land Office in the Travis County suit, pleading that Chapter 2260 applied. CDM Smith eventually obtained a judgment against the City for $15.7 million in the Galveston County suit. The City and CDM Smith agreed to settle for $13.5 million.

"In conjunction with the settlement and dismissal of [these] claims," the City and CDM Smith requested that the Land Office dismiss CDM Smith from the Travis County suit. In exchange, the City stipulated that it would not add Land Office employees as defendants in any related litigation:

> The City also gives notice of nonsuit and moves the Court to enter its order of dismissal with prejudice as to any and all claims presented or which could be presented herein against any and all GLO officials and employees in their official and/or individual capacities, whether or not currently employed by the GLO. . . . The City *further stipulates and agrees that it will not add any GLO officials or employees as defendants in either their official or individual capacities in this or any related litigation.*

The parties filed their stipulation in a Joint Notice in the Travis County suit. As a result, the Land Office agreed to dismiss its claims against CDM Smith with prejudice. The district court ordered that partial dismissal with prejudice in April 2019.

Before the trial court signed the dismissal order, the City sent the Land Office a notice of a claim under Chapter 2260. In the notice, the City claims that the Land Office must reimburse the City for the City's settlement with CDM Smith. After the negotiation period ended, the City requested that the Land Office refer the claim to SOAH.[2] The Land Office did not refer the claim. The City then filed this original proceeding against Commissioner Bush to compel the referral.

---

[2] *See id.* § 2260.102.

**II**

**A**

Article V, section 3 of the Texas Constitution provides that the "Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State." Consistent with Article V, the Legislature has conferred on this Court the authority to issue writs of mandamus against the officers of the executive departments of the State, including Commissioner Bush.[3] A relator's burden to establish compelling circumstances justifying our sparing use of this power is a heavy one.[4]

The City urges that we have issued writs of mandamus to compel public officials to perform ministerial acts, and we should do so in this case.[5] An act is ministerial when the law clearly spells out the duty the official must perform with sufficient certainty that it leaves nothing to the official's discretion.[6]

**B**

The State's immunity from suits arising from breach of contract is waived only by the Legislature's consent, either by statute or—as was the case for over 150 years—by its express consent on a dispute-by-dispute basis.[7] With its enactment of Chapter 2260 in 1999, the Legislature

---

[3] *Id.* § 22.002(c).

[4] *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding).

[5] *E.g., In re Woodfill*, 470 S.W.3d. 473 (Tex. 2015) (orig. proceeding) (per curiam).

[6] *Id.* at 478.

[7] *Zachry Constr. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 121 (Tex. 2014); *see* TEX. CIV. PRAC. & REM. CODE §§ 107.001–.005 (governing resolutions granting permission to sue the State).

did not waive sovereign immunity, but it created an administrative process to attempt to resolve some contract disputes with state agencies before those disputes reach the Legislature.[8]

Chapter 2260 applies to "an independent contractor who has entered into a contract directly" with an agency.[9] The contract must be in writing and "for goods or services," or for a defined project listed in section 2166.001.[10] The statute excludes personal injury and Civil Practice and Remedies Code Chapter 114 claims.[11] It also limits damages to "the balance due and owing on the contract price," the value of additional work performed, and delay or labor-related expenses caused by the State.[12]

Chapter 2260 requires "[e]ach unit of state government that enters into a contract to which this chapter applies" to describe its dispute resolution process in the contract.[13] Those with rulemaking authority must also "develop rules to govern the negotiation and mediation of a claim under this section."[14]

---

[8] *Gen Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 595 (Tex. 2001); *see* TEX. GOV'T CODE § 2260.006 ("This chapter does not waive sovereign immunity to suit or liability.").

[9] TEX. GOV'T CODE § 2260.001(2). We will refer to the State party in a Chapter 2260 contract as an agency, but the statute applies more broadly to:

> [T]he state or an agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state, including a university system or institution of higher education.

*Id.* § 2260.001(4). "The term does not include a county, municipality, court of a county or municipality, special purpose district, or other political subdivision of this state." *Id.*

[10] *Id.* § 2260.001(1). A project under Section 2166.001 is "a building construction project that is financed wholly or partly by a specific appropriation, a bond issue, or federal money." *Id.* § 2166.001(4).

[11] *Id.* § 2260.002. Chapter 114 applies to breach-of-contract claims for engineering, architectural, and construction services and materials contracts in which the amount in controversy is not less than $250,000. TEX. CIV. PRAC. & REM. CODE § 114.002.

[12] TEX. GOV'T CODE § 2260.003(a).

[13] *Id.* § 2260.004.

[14] *Id.* § 2260.052(c). The Office of the Attorney General published the model rules in March 2000. Office of the Att'y Gen., Model Rules, 25 Tex. Reg. 2833, 2833–38 (2000).

To initiate a claim, the contractor sends written notice of the claim to the state agency that was a party to the contract.[15] The agency then must "examine the claim . . . and negotiate with the contractor."[16] The notice of the claim opens a 270-day negotiation period.[17]

At the end of the negotiation period, the contractor may request a SOAH hearing if it "is not satisfied with the results" of the negotiations.[18] The request must (1) state the factual and legal basis for the claim and (2) request that the state agency refer the claim to SOAH.[19] If the notice complies with these requirements, then the agency "*shall* refer the claim" to SOAH "as to the issues raised in the request."[20]

Once referred, an administrative law judge at SOAH conducts a hearing on the claim and issues a written decision.[21] If the judge finds the claim "valid" by a preponderance of the evidence, and the total amount of the claim is less than $250,000, then the agency "shall pay" the claim if appropriated funds for that purpose are available.[22] If the judge finds the claim "valid," and it exceeds $250,000, the agency "shall pay" $250,000 if appropriated funds are available, and the judge must recommend whether the Legislature should appropriate additional funds to pay the claim.[23]

---

[15] TEX. GOV'T CODE § 2260.051.

[16] *Id.* § 2260.052(a).

[17] *Id.* § 2260.055.

[18] *Id.* § 2260.102(a).

[19] *Id.* § 2260.102(b).

[20] *Id.* § 2260.102(c) (emphasis added).

[21] *Id.* § 2260.104.

[22] *Id.* § 2260.105(a), (b).

[23] *Id.* § 2260.105(a-1), (b); *id.* § 2260.1055.

## III

### A

The City asserts that Chapter 2260 governs its contract claim because it provided contract-administration services to the State as the block grant contract requires. Because the City otherwise complied with the chapter's notice provisions, it argues, Commissioner Bush has a ministerial duty to refer their dispute to SOAH.

The Land Office responds that a Chapter 2260 referral is not a ministerial act. Rather, it asserts, a state agency must first determine whether the claim meets Chapter 2260's requirements, and the block grant contract does not. It does not state that Chapter 2260 applies, as the statute requires. Further, as a federally funded disaster-relief contract, it does not fall within the categories of contracts the statute governs. The Office of Attorney General's Model Rules for Chapter 2260 bear this out. Finally, even should Chapter 2260 apply, the Land Office argues that the City bargained away any right it had to seek relief against the Commissioner. The Land Office observes that the City promised not to sue the Commissioner in "any related litigation" to secure CDM Smith's dismissal from the Travis County suit.

### B

When a contractor notifies a state agency of a claim under Chapter 2260, the agency "shall refer the claim." The use of the word 'shall' "in a statute 'evidences the mandatory nature of the duty imposed.'"[24] The Commissioner evades this command by declaring that he must first determine whether Chapter 2260 applies to the claim before referring it to SOAH, and as he evaluates it, the chapter does not apply to the City's claim.

---

[24] *City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 582 (Tex. 2018) (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015)).

The statute does not grant the Commissioner such interpretive latitude. Chapter 2260 does not condition the duty to refer on the Commissioner's judgment as to the chapter's applicability. The discretion the Legislature granted the Commissioner in Chapter 2260 lies in section 2260.052(c): "Each unit of state government with rulemaking authority shall develop rules to govern the negotiation and mediation of a claim under this section." The Legislature confines agency rulemaking to the negotiation and mediation process; it does not contemplate that agencies may withhold their referral when negotiation and mediation fail.[25]

Not every contractor with a dispute against the State is entitled to proceed before SOAH. The statue has express exceptions, and its definitions of "contractor" and "contract" create several more.[26] An administrative law judge may dismiss the claim for these reasons. However, the statute grants no authority to the referring agency to interpret these provisions. Absent legislative authorization, a state agency may not refuse to refer the claim based on its unilateral interpretation of Chapter 2260.

We do not decide today whether the City is a "contractor" under Chapter 2260. Based on the pleadings filed and evidence received, SOAH can determine whether a claim is "valid" under the laws of the state—including Chapter 2260.[27]

## C

We nevertheless decline to grant mandamus relief in this case because the City agreed not to hale the Commissioner into court in any proceeding related to this dispute.

---

[25] *See id.* (contrasting the City of Houston Pension System's discretion to determine *how* payments are made with its ministerial duty to make payments); *see also In re Brown*, 614 S.W.3d 712, 719 (Tex. 2020) (orig. proceeding) (holding that the Texas Comptroller's ministerial duties under the Tim Cole Act did not extend to interpretating jurisdictional statutes).

[26] *See* TEX. GOV'T CODE § 2260.001–.002.

[27] *Id.* § 2260.105.

8

The City stipulated in the Travis County lawsuit that it would "not add any GLO officials or employees as defendants in either their official or individual capacities in this or any related litigation" as part of the settlement with CDM Smith. In exchange, the Land Office agreed to dismiss its claims against CDM Smith in the Travis County suit. The descriptor "any related" is a broad one.[28] Applying it here, this request for mandamus relief is "related" litigation.[29] It involves the same facts, the same parties, and ultimately seeks the same aim: to determine whether the Land Office must reimburse the City for the CDM Smith settlement.

The City argues that it could not anticipate the Commissioner's refusal to refer its Chapter 2260 claim. But the City pleaded the applicability of Chapter 2260 in the Travis County suit in November 2018, before it agreed not to sue the Commissioner in the Joint Notice, and it sent the Chapter 2260 notice while the motion to dismiss was pending.

As a general principle, "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy."[30] In the appropriate circumstances, we have

---

[28] *See Related*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Connected in some way; having relationship to or with something else"); *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam) (interpreting "related to," as used in the Texas Citizens Participation Act, as not requiring more than a tangential relationship).

[29] The City does not challenge Commissioner Bush's status as a "defendant" in this proceeding. The ordinary meaning of "defendant" includes "a person or group against whom a criminal or civil action is brought : someone who is being sued or accused of committing a crime." *Defendant*, MERRIAM-WEBSTER ONLINE (2021). As the respondent in this case, Commissioner Bush is "a party against whom relief is sought in an original proceeding in an appellate court." TEX. R. APP. P. 3.1(h)(2).

[30] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004) (org. proceeding).

9

enforced covenants not to sue in a variety of situations.[31] The City offers no other reason to disregard its agreement; even if it had, any fact issue would preclude mandamus relief.[32]

Though we decline the City's invitation to compel the Commissioner to refer the claim, the result here does not halt the City's effort to seek reimbursement through legislative appropriation. Chapter 2260 sets forth a process for adjudicating a claim, but the administrative law judge's findings are not binding for claims over $250,000, and payment of any amount is conditioned on the availability of appropriated funds to pay it.[33] A failure to complete that process no longer limits the City's ability to seek recompense through legislative appropriation, as it once did.[34] With or without Chapter 2260, the ultimate remedy—an appropriation of funds to satisfy the City's claim or legislative consent to sue—must come from the Legislature itself.[35]

\* \* \*

---

[31] *E.g.*, *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 217 (Tex. 2019) (holding that limitation-of-liability clause barred punitive damages award); *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 545 (Tex. 2001) (holding that pre-injury agreements to release common-law claims did not violate public policy), superseded in part by statute, TEX. LAB. CODE § 406.033(e); *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267–68 (Tex. 1974) (upholding contract limiting liability of parking lot owner for theft of automobile as a result of owner's ordinary negligence to $100).

[32] *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978) (orig. proceeding) ("[A]n appellate court may not deal with disputed areas of fact in a mandamus proceeding.").

[33] TEX. GOV'T CODE § 2260.054; *id.* § 2260.105(b).

[34] In *General Services Commission v. Little-Tex Insulation Co*., we concluded that the Legislature had made Chapter 2260 a prerequisite to sue under Chapter 107 of the Civil Practice and Remedies Code. 39 S.W.3d 591, 597 (Tex. 2001). Subsequently, the Legislature amended Chapter 2260, adding that "the legislature retains the authority to deny or grant a waiver of immunity to suit against a unit of state government by statute, resolution, or any other means the legislature may determine appropriate." Act of May 23, 2001, 77th Leg., R.S., ch. 1158, § 73, sec. 2260.007, 2001 Tex. Gen. Laws 2570, 2610 (codified at TEX. GOV'T CODE § 2260.007(a)).

[35] *Little-Tex*, 39 S.W.3d at 597 ("[W]e conclude that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature."); *see also* TEX. GOV'T CODE § 2260.007 (providing for legislative consent to sue regardless of whether a party initiates a proceeding under Chapter 2260).

The City seeks extraordinary relief against the Commissioner that is inconsistent with its promise not to do so. Accordingly, we deny its petition for a writ of mandamus.

                                    _____

                                    Jane N. Bland
                                    Justice

OPINION DELIVERED:  May 7, 2021