# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0584
════════════

SOUTHWESTERN BELL TELEPHONE, L.P. D/B/A AT&T TEXAS, PETITIONER,

v.

ED EMMETT, EL FRANCO LEE, JACK MORMAN, STEVE RADACK, AND R. JACK
CAGLE, AS MEMBERS OF THE HARRIS COUNTY COMMISSIONERS' COURT;
MICHAEL MARCOTTE, AS DIRECTOR OF THE CITY OF HOUSTON DEPARTMENT OF
PUBLIC WORKS AND ENGINEERING; AND CITY OF HOUSTON, RESPONDENTS

═════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═════════════════════════════════════════════════════════

**Argued December 10, 2014**

JUSTICE JOHNSON delivered the opinion of the Court.

JUSTICE BROWN did not participate in the decision.

Southwestern Bell Telephone, L.P. doing business as AT&T Texas (AT&T), a public utility company with facilities attached to a city bridge designated to be demolished, sought a declaratory judgment that the Harris County Flood Control District must bear the costs of relocating AT&T's facilities pursuant to Texas Water Code § 49.223. The trial court determined that the District was not responsible for the relocation costs and the court of appeals affirmed.

We conclude that the District made the relocation necessary within the contemplation of § 49.223. We reverse in part and affirm in part the judgment of the court of appeals.

## I. Background

The Harris County Flood Control District is a governmental agency created pursuant to the Texas Constitution. TEX. CONST. art. XVI, § 59(b); Act of May 15, 1937, 45th Leg., R.S., ch. 360, 1937 Tex. Gen. Laws 714. Its "rights, powers, privileges, and functions" include "devis[ing] plans and construct[ing] works to lessen and control floods." Act of May 15, 1937 § 2e.

The governing body of the District, the Harris County Commissioners Court, adopted the Brays Bayou Flood Damage Reduction Plans in order to widen and deepen the Brays Bayou Channel and thereby reduce flooding around the Bayou. Project Brays calls for the creation of several water detention basins and the destruction of thirty bridges spanning Brays Bayou. The channel could have been widened without demolishing the bridges by widening all of the channel except those portions where the bridges attach, but the District elected to widen the entire channel, which required demolishing and reconstructing the bridges. Destruction of the bridges requires the utilities on the bridges to be relocated. Texas Water Code § 49.223 requires that relocation of utility facilities be done at the sole expense of the District when the District's exercise of power "makes necessary" such relocation. TEX. WATER CODE § 49.223(a).

Project Brays calls for demolition and reconstruction of bridges controlled by the City of Houston, so the District and the City entered into the Brays Bayou Flood Damage Reduction Plan Interlocal Agreement, detailing the responsibilities of each entity. The Interlocal Agreement encompassed two projects, but only Project I is at issue in this case. Under Project I, the District

agreed to "design, construct, replace, extend, or modify" a number of the bridges the City controlled. One pertinent aspect of the Interlocal Agreement is Section 8, whereby the City, after receiving notice from the District, would issue relocation notices to third parties such as public utility companies, instructing that they relocate their facilities from a bridge right-of-way at the third parties' own expense. The relevant language of the agreement is:

> The District may require the modification and/or relocation of facilities owned by one or more third parties to Construct Project I bridges and utilities, including but not limited to public utility companies. Where the City has the right to require a public utility company or other third party to modify and/or relocate its facilities at its own cost, the City shall designate the District as the City's project manager, and upon written request by the Director of the District made to the Director of Public Works and Engineering, direct the public utility company or other third party to modify and/or relocate its facilities in conjunction with the construction of Project I, at no cost to the City or to the District.

AT&T owns telecommunication facilities on the Forest Hill Street Bridge, which Project Brays designated for destruction. Therefore, as adopted by the District, Project Brays requires that AT&T's facilities be relocated.

After numerous correspondences between AT&T, the City, and the District, the District's Flood Control Director contacted Michael Marcotte, Director of the Department of Public Works and Engineering for the City. Per the Interlocal Agreement, Marcotte was requested to have the City direct AT&T to relocate its facilities from the Bridge without cost to the City or the District. The City then sent AT&T a letter indicating that if AT&T failed to relocate its facilities, the City would relocate them and assess the costs against AT&T. *See* HOUSTON, TEX., CODE OF ORDINANCES ch. 40, art. XVIII, § 40-393(a) (2005).

3

AT&T sued the City, Marcotte in his official capacity, and the County Commissioners in their official capacities, seeking an injunction preventing the removal of its facilities from the Bridge and a declaratory judgment that § 49.223 of the Texas Water Code requires the District to bear any relocation costs resulting from Project Brays. The Commissioners responded by filing pleas to the jurisdiction and the remaining parties filed cross-motions for no-evidence and traditional summary judgments.

The trial court granted the Commissioners' plea to the jurisdiction and summary judgment to Marcotte and the City. The court of appeals affirmed. *Sw. Bell Tel. L.P. v. Emmett*, 401 S.W.3d 826 (Tex. App.—Houston [14th Dist.] 2013). The appeals court reasoned that the relocation costs sought by AT&T were not clearly within the statute's purview because the District was not shown to have made the relocation necessary, due in large part to (1) the City's involvement in Project I and (2) the testimony of Project Brays's Manager that the bridge had not been demolished yet and it could be left intact, resulting in the channel remaining narrow at the bridge crossing. *Id.* at 838, 840.

In this Court, AT&T contends that the court of appeals misconstrued § 49.223 by failing to give effect to the plain meaning and purpose of the statute, relying instead on *Air Liquide America Corp. v. United States Army Corps of Engineers*, 359 F.3d 358 (5th Cir. 2004), where the United States Court of Appeals for the Fifth Circuit interpreted a different Texas statute. Further, AT&T maintains that the District "made necessary" the relocation of its facilities within the meaning of § 49.223 because (1) the statute does not mandate that the District be the sole cause of relocation before it is responsible for expenses of relocation, (2) the District has the power to devise and implement flood control plans, and (3) the District adopted the version of Project Brays requiring

4

the demolition and reconstruction of the Bridge, so the availability of another plan leaving the Bridge in place does not lessen the District's role in necessitating relocation of AT&T's facilities if they must be relocated as a result of Project Brays.

In support of the trial court's decision the District argues that § 49.223 is inapplicable because (1) "it was the City—not the District—that 'made necessary the relocation'; and (2) it was the City—not the District—that exercised the power to direct AT&T to move its wires." In order for the District to be responsible for relocation expenses, the District principally contends, its exercise of power must be sufficient in and of itself to "make necessary" relocation, and because the City is a home-rule municipality, the City has exclusive jurisdiction over the roadways and bridges and the bridge could not be destroyed without its consent. Therefore, its argument goes, any exercise of power by the District is insufficient to authorize and make necessary the relocation of the facilities, absent the City's acquiescence.

The Commissioners contend that AT&T failed to allege any conduct by them that would serve to waive their immunity. Thus, they assert that the trial court correctly granted their collective plea to the jurisdiction.

The primary issue before us is whether the District's exercise of power will make necessary the relocation of AT&T's facilities if and when the Bridge is demolished, essentially (1) whether the district exercised one of its powers, and (2) whether that exercise of power will make relocation of AT&T's facilities necessary. Although ordinarily we would first consider whether the Commissioners have governmental immunity from suit, which would implicate the trial court's subject matter jurisdiction, we begin by considering the proper construction of Texas Water Code

5

§ 49.223. That is because whether the Commissioners' conduct constitutes ultra vires actions that falls within an exception to governmental immunity depends on what the statute required of the District. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004) (recognizing instances where jurisdictional analysis will require the examination of the merits of the cause of action); *Gattis v. Duty*, 349 S.W.3d 193, 206 (Tex. App.—Austin 2011, no pet.).

## II. Discussion

### A. Standard of Review

We review summary judgments de novo. When faced with competing summary judgment motions where the trial court denied one and granted the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

### B. Texas Water Code § 49.223

Under the common law, a utility company must relocate facilities located in a public right-of-way at its own expense. *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 62 (Tex. 2009) (citing *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 34 (1983)). However, the common law only controls in the absence of legislative action. *Cf. State v. City of Austin*, 331 S.W.2d 737, 741 (Tex. 1960) (recognizing that absent the State's assumption of part of the expense, utility owners bear the financial burden of relocating facilities on public rights-of-way).

Section 49.223(a) of the Texas Water Code provides:

> In the event that the district or the water supply corporation, in the exercise of the power of eminent domain or *power of relocation or any other power*, *makes necessary* the relocation . . . of any road, bridge, highway, railroad, electric transmission line, telegraph, or telephone properties, facilities, or pipelines, all necessary relocations . . . *shall be done at the sole expense of the district* or the water supply corporation unless otherwise agreed to in writing.  Such relocation shall be accomplished in a timely manner so that the project of the district or the water supply corporation is not delayed.

TEX. WATER CODE § 49.223(a) (emphasis added).  Where a statute appears to depart from the common law and seeks to impose liability, "the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993).  Accordingly, in the absence of a statutory definition of "made necessary," we will ascribe to the text its plain meaning. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014) ("We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd results.").  Statutory construction also requires us to take statutes as we find them, understanding that the Legislature purposefully selected the words chosen. *See id.*

With these principles in mind we look to the plain meaning of the precise text chosen by the Legislature. *Black's Law Dictionary* defines "make" as "to cause (something) to exist." BLACK'S LAW DICTIONARY 1099 (10th ed. 2014).  Likewise, *Webster's Dictionary* defines "make" as "cause to exist or happen." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1161 (1996 ed.). Turning to the same sources for an understanding of the plain meaning of "necessary," we determine it to be something that is essential or needed for some purpose. *See id.* at 1283-84 (defining

7

"necessary" as "being essential, indispensable, or requisite"); BLACK'S, *supra*, at 1192 ("That is needed for some purpose or reason."). Accordingly, we must determine whether the District's exercise of its power caused the need for AT&T's facilities to be relocated.

The Act of May 15, 1937 outlines the powers of the District. As noted earlier, the District is charged with designing plans and constructing works to manage flood waters. Section 2 of the Act, entitled "Added Powers," includes "[t]o cooperate with, or to contract with, the City of Houston . . . in relation to surveys, the acquisition of land or right of ways, the construction or maintenance of projects or parts thereof or the financing of the same in connection with any matter within the scope of this Act." Act of May 15, 1937 § 2. The District exercised its enumerated power to contract with the City of Houston when it entered into the Interlocal Agreement.[1]

Section 8 of that agreement required the City to name the District as its Project Manager. The agreement in turn provides that the District, as the Project Manager, has the power to require the City to send notice of relocation upon its written request: "[T]he City *shall* designate the District as the City's project manager, and upon written request by the Director of the District made to the Director of Public Works and Engineering, direct the public utility . . . to relocate its facilities in conjunction with the construction of Project I." (emphasis added). As a result of the District's power to contract with the City of Houston, the District, through the exercise of such power, gained contractual authority to require the City to send notice to relocate AT&T's facilities.

---

[1] The District contends that it also acted pursuant to its power of relocation. However, because we determine that it exercised its authorized powers in contracting with the City for contractual authority to require the City to act, we need not reach that argument.

Furthermore, the degree of the District's involvement in causing the bridge demolition, thereby requiring the relocation of AT&T's facilities, is highlighted by the fact that apart from Project Brays the City had no intent to remove or reconstruct the bridge. Absent the District's flood control plan, the bridge would not have been scheduled to be demolished and AT&T would not need to relocate its facilities. So, the District caused the relocation of the facilities to become necessary by adopting Project Brays and contracting with the City to effectuate it. Therefore, the District made necessary the relocation of AT&T's facilities within the meaning of § 49.223.

The court of appeals held that relocation of AT&T's facilities was not necessary, focusing on testimony that the channel could still be widened without removal of the bridge. But the availability of an alternate plan that was never adopted is irrelevant to whether the actual plan adopted by the District "makes necessary" relocation. If the mere availability of other plans was the standard, no District plan might ever make relocation necessary. Further, if the District changes its plan and the bridge is not demolished so AT&T's facilities are not required to be relocated, then an expense will not be borne by anyone; the District's fate as to the relocation expenses is in its own hands.

The District cites the Fifth Circuit's decision in *Air Liquide* as support for its contention that the statutory "made necessary" language is met only when the District's exercise of power is solely sufficient to necessitate the relocation. It asserts this is not the case here because the City has exclusive control of the bridges within its jurisdiction. We disagree both with the District's analysis of *Air Liquide* and its exclusive power argument.

9

*Air Liquide* concerned the cost allocation for the relocation of a pipeline under the Houston Ship Channel. *Id.* at 360. The channel was to be widened as a joint project of the U.S. Army Corps of Engineers and the Port of Houston Authority. *Id.* The case addressed both a different Texas Water Code section (mandating the Port pay relocation costs if the relocation was "required"), and identified that Texas law was not controlling, relying instead on the federal Rivers and Harbors Act of 1899. *Id.* However, the case bears some resemblance to the instant case because the Corps issued removal notices to the pipeline owners at the Port's request. *Id.* at 361. Given that circumstance, the Fifth Circuit scrutinized the Port's lack of power, stressing that the cooperation agreement between the Corps and the Port "did not require the Corps to exercise its permit authority; and it certainly did not empower the Port to mandate the Corps to require pipeline relocation." *Id.* at 363.

The power the Port lacked in *Air Liquide* resides in the District under the facts before us. The City and the District have an agreement through which the District can require the City to issue relocation notices to utilities and ostensibly spare the District the expense of relocating their facilities. Given that state of facts, *Air Liquide* supports the contention that the District's exercise of its contractual authority led to the City's issuance of the relocation demand and notice.

Even if this Court determines as it did that the situation at hand is clearly within the purview of § 49.223, Marcotte and the Commissioners next argue, such an interpretation is untenable because it conflicts with Texas Utilities Code § 54.203(c)[2] and a City of Houston ordinance.[3] But Texas

---

[2] **§ 54.203. Service in Annexed or Incorporated Area**

.  .  .

(c) The governing body of a municipality may require a certificated telecommunications utility to relocate the utility's facility at the utility's expense to permit the widening or straightening of a street by:

10

Water Code § 49.223 requires the District to pay for relocation while Texas Utility Code § 54.203(c) requires the utility owner to pay vis-à-vis the City. There is no contention here that the City is responsible for relocation costs. In fact, the parties have signed a Rule 11 Agreement to the effect that the City is not responsible for relocation costs. So, as applied to the matter before us, no conflict exists between a statute providing that as between a district and a utility, the district pays, and a statute providing that as between a municipality and a utility, the utility pays. Nor does the fact that the City has elected to finance the widening of the Bridge as part of the District's Project Brays change our view. Where the City merely finances an addition to a previously planned and adopted District project that requires the relocation of a utility's facilities, the partnering of the two entities does not serve to override the text and intent of Water Code § 49.223 or create a conflict with Utilities Code § 54.203.

---

(1) giving the utility 30 days' notice; and

(2) specifying the new location for the facility along the right-of-way of the street.

TEX. UTIL. CODE § 54.203(c).

[3] **Sec. 40-393. Relocation required.**

(a) Whenever the city engineer determines, in the exercise of sound engineering judgment, that a facility should be relocated for the accomplishment of a public works project, the owner of the facility shall relocate the facility at the owner's sole expense in accordance with this article. In the event that an owner's failure to timely relocate a facility in accordance with this article causes the city to incur expenses, damages or losses, including loss of grant funds, for any resulting delay, the owner of the facility shall be responsible for the city's expenses, damages or losses.

(b) It shall be the policy of the city to design public works projects to minimize the relocation of facilities, but the city shall not be obligated to design a public works project to avoid facility relocation and the determination of the city engineer of the appropriate design of the public works project shall be final.

HOUSTON, TEX., CODE OF ORDINANCES ch. 40, art. XVIII, § 40-393.

As for the alleged conflict between the Houston Ordinance and Water Code § 49.223, we find the answer in the explicit language of a latter section of the same article of the Ordinance. Section 40-397 states: "Nothing in this subsection shall preclude the application of funds from sources other than the city to the payment of relocation expenses on behalf of the owner of a facility." HOUSTON, TEX., CODE OF ORDINANCES ch. 40, art. XVIII, § 40-397(f). As such, even had there been a conflict, the language illustrates that Water Code § 49.223's requirement that the District pay the utilities' costs is entirely permissible and even contemplated by the Ordinance.

Finally, we address the Commissioners' contention that if § 49.223 requires the District to pay for relocation of the facilities, it is unconstitutional as applied. The Commissioners argue that § 59 of Article XVI of the Texas Constitution, under which the District was organized as a conservation and reclamation district, does not contemplate expending district tax funds for relocation of public utilities' facilities. We disagree.

We recognized in *State v. City of Austin*, 331 S.W.2d 737, 743 (Tex. 1960), that legislative acts mandating payment to a utility for the relocation of its facilities do not contravene the Constitution as long as "the statute creating the right of reimbursement operates prospectively, deals with the matter in which the public has a real and legitimate interest, and is not fraudulent, arbitrary or capricious." We identified uninterrupted or minimally interrupted utility services as being vital to the public's welfare:

> Utilities are necessary adjuncts of the public welfare. Their business operations and their property have been subject to special legislative treatment for many years . . . In the present context, uninterrupted service during and after the completion of the . . . project is vital. Where removal of facilities is necessary, it is important that

12

> relocation be as expeditious and controversy-free as possible. That end is intimately related to the achievement of the overall public purpose.

*Id.* at 745 (quoting *Wilson v. City of Long Branch*, 142 A.2d 837, 847 (N.J. 1958). Because the relocation of AT&T's facilities concerns a matter of public interest and is appropriate to the District's flood control purpose, § 49.223's allocation of district funds to accomplish relocation of those facilities for the District's Project Brays is not unconstitutional as applied here. TEX. CONST. art. XVI, § 59 ("[T]he Legislature shall pass all laws as may be appropriate thereto.").

Because the District exercised one of its powers and made relocation of AT&T's facilities necessary, the relocation costs come within the provisions of § 49.223. Thus, the trial court erred by granting summary judgment in favor of the City and the court of appeals erred by affirming that judgment.

We next consider the claim that Marcotte and the Commissioners have immunity. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.").

### C. Ultra Vires Claims

Governmental immunity implicates a court's jurisdiction and serves to protect political subdivisions of the state from both suit and liability. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). While a legislative waiver of governmental immunity is usually required for suit against a governmental entity, "an action to determine or protect a private party's rights against a

state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009) (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)). Such claims must be brought against the state actor in her official capacity because the State and its subdivisions remain immune. *Id.* at 373. And while a suit for injunctive and declaratory relief brought against an officer in her official capacity is not shielded by immunity from suit, the available relief is restricted because "the suit is, for all practical purposes, [a suit] against the [governmental entity]," and the governmental entity is generally immune from claims for retrospective monetary relief. *Id.* at 374. However, as we identified in *Heinrich*, while declaratory judgment claims seeking "retrospective monetary [relief] are generally barred by immunity," claims for prospective payment in accord with a statutory obligation are not necessarily barred. *Id.* at 374. For the ultra vires exception to immunity to apply, it must be proved that the state actor either failed to perform a ministerial task or acted without legal authority. *Id.* at 372.

Ministerial acts are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Discretionary acts on the other hand require the exercise of judgment and personal deliberation. *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004).

### 1. Commissioners' Plea to the Jurisdiction

Where a plea to the jurisdiction challenges the pleadings, as the Commissioners did below, a reviewing court must determine whether the party asserting jurisdiction has alleged facts that

affirmatively demonstrate or negate the trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). This determination is a question of law, which we review de novo. *Id.*

AT&T alleged that the Commissioners acted ultra vires by their clear and extended refusal to accept responsibility for repayment of AT&T's relocation costs and by directing the City to send the relocation notice. AT&T urges that such clear repudiation of the District's statutory obligation is in violation of their duty and that declaratory relief is not barred by immunity even though it would compel prospective payment. We agree.

The Commissioners argue that AT&T has not alleged that they have taken actions placing them within the ultra vires exception to immunity. But the Commissioners sidestepped AT&T's attempts to work out an agreement for the District to bear the relocation costs of the facilities for a number of years by refusing to respond to correspondences requesting a written costs agreement. The District eventually responded by instructing the City to send a notice to AT&T directing it to relocate its facilities at its own expense. If AT&T relocated its facilities and then sought reimbursement from the District, its claim—whether styled as one for damages or declaratory relief—would run afoul of the District's governmental immunity because AT&T would be seeking retrospective monetary relief. The Commissioners' execution of the letter directing the City to send the relocation notice overtly evidenced their refusal to comply with Water Code § 49.223's requirement that the District pay the utilities' costs by affirmatively acting in a manner that was intended to force AT&T to bear the relocation costs. The Commissioners' actions unequivocally demonstrated their intent not to comply with the statute. AT&T's only viable option for enforcement

15

of § 49.223 at that point was to bring suit seeking a declaratory judgment and prospective relief as to the District's obligations under the statute.

The next question is whether the Commissioners' anticipatory refusal to comply with the statute qualifies as a ministerial act or was undertaken without legal authority, placing the conduct within the ultra vires exception to governmental immunity.

Section 49.223 mandates that the District will bear the costs of relocation where exercise of the District's power makes such relocation necessary:

> In the event that the district or water supply corporation, in the exercise of the power of eminent domain or power of relocation or any other power, makes necessary the relocation . . . of any road [or] bridge . . . all necessary relocations . . . shall be done at the sole expense of the district or water supply corporation unless otherwise agreed to in writing.

TEX. WATER CODE § 49.223(a). The use of the word "shall" evidences the mandatory nature of the duty imposed, and the statue provides under what circumstances the District is to bear the expense. *Cf. Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996) (concluding that an employee's actions were not ministerial because a classroom discipline plan required deliberation and was discretionary where the mandate failed to instruct, among other things, which conduct required discipline and when and where to discipline the students). The statute also contains no indication that the District is to conduct any form of review, deliberation, or judgment in exercising its payment obligation. In other words, if the District's exercise of power made necessary the utilities relocation, the statute requires the District to bear the relocation costs. *See McLane Co. v. Strayhorn*, 148 S.W.3d 644, 650 (Tex. App.—Austin 2004, pet. denied) (finding immunity barred suit because the statute granted discretion to the comptroller to determine the adequacy of collateral when it stated "similar types of

16

collateral acceptable to the comptroller."); *Tex. Racing Comm'n v. Marquez*, No. 03-09-00635-CV, 2011 WL 3659092, at *5 (Tex. App.—Austin Aug. 19, 2011, no pet.) (mem. op.) (concluding that director did not have discretion to not docket an administrative appeal where relevant administrative code stated: "If after a reasonable time the proceeding cannot be settled through agreement, the executive secretary shall refer the matter to SOAH"). Thus, because § 49.223 imposes a purely ministerial duty upon the District, the Commissioners had no discretion in determining whether the District would pay the relocation expenses, and they failed to perform the ministerial task of authorizing payment. Under such circumstances their conduct in requesting the City to issue notices of relocation constituted ultra vires acts in contravention of their ministerial duty to cause the District to bear the costs of relocating AT&T's facilities. Therefore, the trial court had jurisdiction over AT&T's claims against the Commissioners and the trial court erred by granting the Commissioners' plea to the jurisdiction.

Further, AT&T is entitled to declaratory relief that payment of its relocation expenses by the District is required by § 49.223. Although that declaration essentially is a requirement for prospective relief against the District, the District's immunity does not shield it from such relief. *See Heinrich*, 284 S.W.3d at 368-69.

### 2. Marcotte's No-Evidence Motion for Summary Judgment

Where a no-evidence motion for summary judgement is granted, as Marcotte's was, a reviewing court will sustain the summary judgment if "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than

a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

In his summary judgment motion, Marcotte contended that governmental immunity insulates him from this suit because, as AT&T's pleadings alleged, he was acting in accordance with a City of Houston Ordinance when he sent the relocation notice and threatened to remove the facilities and assess the costs against AT&T. As stated earlier, the ultra vires exception to immunity only applies where a government actor fails to perform a ministerial task or acts without authority of law. *Heinrich*, 284 S.W.3d at 370. Neither of these instances are present here. It is undisputed that Marcotte's actions conformed with the Houston Ordinance. The undisputed facts establish that Marcotte acted with authority of law and that the ultra vires exception is inapplicable as to him. Accordingly, we affirm the trial court's grant of no-evidence summary judgment as to Marcotte.

### III.  Disposition

We reverse the court of appeals' judgment to the extent it affirms the trial court's judgment denying AT&T's motion for summary judgment, grants summary judgment in favor of the City, and grants the Commissioners' pleas to the jurisdiction. We affirm that part of the judgment in favor of Marcotte.

We remand the case to the trial court for further proceedings consistent with this opinion.

_____
Phil Johnson
Justice

18

**OPINION DELIVERED:**  March 20, 2015