**Affirmed in Part, Reversed and Rendered in Part, and Remanded and Memorandum Opinion filed March 7, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00285-CV

---

## LIL C RANCH, LLC, Appellant

## V.

## RIDGEFIELD EAGLE FORD MINERALS, LLC, Appellee

---

**On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 36584**

---

### MEMORANDUM OPINION

This case involves a dispute over the ownership of the mineral estate in a tract of real property in Washington County, Texas. Appellant Lil C Ranch, LLC ("Lil C") appeals a summary judgment in favor of appellee Ridgefield Eagle Ford Minerals, LLC ("Ridgefield"). In three issues which we have reorganized, Lil C argues: (1) the trial court erred in granting Ridgefield's traditional motion for summary judgment on a declaratory-judgment action when Ridgefield did not

plead a claim for declaratory judgment, the judgment exceeded the relief requested by Ridgefield, the trial court lacked jurisdiction to grant declaratory judgment vesting title in the mineral estate in Ridgefield, and Ridgefield failed to conclusively establish all elements of its quiet-title claim; (2) the trial court erred in denying Lil C's traditional motion for summary judgment on its claims for trespass to try title and quiet title; and (3) the trial court erred by granting Ridgefield's no-evidence motion for summary judgment because Ridgefield failed to identify which elements of Lil C's claims it was challenging. We affirm in part, reverse and render in part, and remand the case for further proceedings.

## I. BACKGROUND

On June 25, 1996, the Henry Gardiner Symonds Trust and Thumbs Up Land Company, Ltd. ("Thumbs Up") executed a deed ("the Hopper deed"), conveying a 46.209-acre tract of real property in Washington County, Texas, to Robert Bernard Hopper III and Sherry Angela Hopper. Under the Hopper deed, the grantors conveyed 100 percent of the surface estate but reserved 100 percent of the oil, gas, and other liquefiable hydrocarbons and seventy-five percent of the royalties from the mineral estate for a period of ten years and so long thereafter as production of any minerals continued uninterrupted in commercially paying quantities. On September 30, 2014, Lil C acquired ownership of a 36.2-acre tract out of this 46.209-acre tract conveyed by the Hopper deed.

On September 5, 2018, Lil C filed a petition for declaratory judgment against Thumbs Up; J. Taft Symonds; Susan Symonds Bodin; Allen Symonds; David Symonds; Jonathan Symonds, II; Margaret Symonds; Williston H. Symonds; Allison Symonds; Stacey Symonds; the unknown heirs of Williston B. Symonds, deceased; the unknown heirs of J.G. Symonds, Jr., deceased; and the unknown trustee of the Henry Gardiner Symonds testamentary trust whose name

2

and whereabouts are unknown. Lil C sought a declaratory judgment "that ownership of 100% of the mineral estate, along with 100% of the royalty interest therefrom, has vested in Lil C Ranch as successor-in-interest to the Grantee under the Hopper Deed . . . ." On July 8, 2019, Lil C amended its petition and added Keith R. Symonds, Lorne R. Symonds, Scott Symonds, and Ridgefield as defendants. Lil C also added a claim for trespass to try title against all defendants and a claim for suit to quiet title against Ridgefield.

In its live pleading, Lil C claimed that it owns the surface estate and the mineral estate of the 36.2-acre tract. Lil C averred that it owned the mineral estate in the tract in its entirety because as of June 25, 2006—ten years after the applicable mineral reservation in the Hopper deed—"there was no production associated with the mineral interest subject to the Mineral Reservation." As to its trespass-to-try-title claim, Lil C sought a declaration "that Lil C is the fee simple owner of 100% of the surface and mineral estate, including 100% of the royalties regarding the mineral estate" and that "Defendants are attempting to claim superior title to the mineral estate in the 36.2-Acre Tract contrary to the terms of the Mineral Reservation." As to its suit-to-quiet-title claim, Lil C sought "a judgment from the Court removing the Mineral and Royalty Deeds as a cloud on Lil C Ranch's title." As to its declaratory-judgment claim, Lil C requested "a declaratory judgment that Lil C Ranch owns 100% of the mineral estate, along with 100% of the royalty interest therefrom, in the 36.2-Acre Tract as the vested fee simple owner . . . ." Lil C's prayer for relief asked the trial court to "issue a judgment confirming Lil C Ranch as the fee simple owner of the surface and mineral estate in the 36.2-Acre Tract"; "a judgment decreeing that . . . Ridgefield has no rights or interest in the 36.2-Acre Tract"; "judgment quieting title to Lil C Ranch and removing the Mineral and Royalty Deeds as a cloud on Lil C Ranch's title"; "in the

alternative, a declaratory judgment as requested herein"; and attorney's fees and costs.

On July 10, 2019, Ridgefield filed a petition in intervention, requesting that the trial court "upon trial enter judgment in favor of Ridgefield and against Lil C." Ridgefield asserted in its petition in intervention that it owns 100 percent of the minerals and seventy-five percent of the royalty interest in the minerals in the 46.029-acre tract conveyed under the Hopper deed, which includes the mineral estate of the 36.2-acre tract that Lil C argued it owns 100 percent of. Ridgefield averred that the mineral reservation in the Hopper deed had not expired because Thumbs Up granted an oil and gas lease to Four Star Resources, LLC covering the disputed tract as well as two additional tracts; the lease contained a pooling provision providing that operations and production on the pooled unit are considered operations or productions on the tracts pooled; and there has been continuous commercial production of oil and gas through units established through pooling under the lease.

Ridgefield's petition in intervention sought to address the question of ownership of the mineral estate in the 36.2-acre tract, and requested a judgment in Ridgefield's favor "quieting title to 100% of the mineral estate in the Ridgefield tract and 75% of the royalty attributable to production from the Ridgefield tract . . . ."[1] All defendants other than Ridgefield disclaimed any interest in the disputed real property.

---

[1] Ridgefield specially excepted to Lil C's original petition, arguing that because Lil C's original petition sought a determination of the ownership of the mineral estate, the only cause of action available to make such a determination is a trespass-to-try-title action, not a declaratory judgment action. The record does not include a ruling on Ridgefield's special exception. Failure to obtain a timely hearing and a ruling on special exceptions waives the exceptions and does not preserve them for appeal. Tex. R. App. P. 33.1(a); *see Davis v. Angleton Indep. Sch. Dist.*, 582 S.W.3d 474, 481 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

On March 5, 2021, Ridgefield filed a hybrid traditional and no-evidence motion for summary judgment, which it later amended. On March 8, 2021, Lil C filed its own motion for traditional summary judgment, arguing that it was entitled to summary judgment on its trespass-to-try-title claim, suit-to-quiet-title claim, and its declaratory-judgment claim. Lil C argued that it was the owner of the entire mineral estate, including the royalty interest, because the leases executed by Thumbs Up could not modify the mineral reservation in the Hopper Deed. Lil C argued that, as a result, it was entitled to judgment in its favor on its trespass-to-try-title claim and suit-to-quiet-title claim. As to its trespass-to-try-title claim, Lil C noted that "[a] trespass to try title action is the exclusive remedy by which to resolve competing claims to property." As to its suit-to-quiet-title claim, Lil C requested "an order titling Lil C Ranch as the vested fee simple owner of the mineral estate, along with the royalty interest therefrom, in the 36.2-Acre Tract." Based on the same argument concerning the effect of the leases on the mineral reservation, Lil C further argued that it is entitled to summary judgment on its declaratory-judgment claim and a declaration that Lil C is "the vested fee simple owner of the mineral estate, along with the royalty interest therefrom, in the 36.2-Acre Tract."

On March 11, 2021, Ridgefield amended its hybrid motion for summary judgment. In its amended motion, Ridgefield argued that Lil C invoked the Declaratory Judgment Act and requested the trial court award Ridgefield attorney's fees and further requested that the trial court "enter a summary declaratory judgment [in Ridgefield's favor] vesting title to 75% of the royalty attributable to the 36.2 acres claimed by" Lil C. Ridgefield argued that the pooling provision in the leases that included the 36.2-acre tract extended the mineral reservation, even though the production under the lease was not generated from the 36.2 acres of

land owned by Lil C.

Ridgefield filed a response to Lil C's motion for traditional summary judgment, averring that there was production from the 36.2-acre tract and that Lil C's legal authority is inapplicable because the cases Lil C relies on concerned shut-in gas wells. In its response to Ridgefield's hybrid motion, Lil C argued that Ridgefield failed to: conclusively prove that it is entitled to a declaratory judgment that Ridgefield is the vested owner of seventy-five percent of the royalty interest attributable to the 36.2-acre tract; allege that it has superior title to 100 percent of the mineral interest in the 36.2-acre tract; and properly plead any grounds to support its no-evidence motion for summary judgment. The defendants other than Ridgefield objected to Lil C's motion for summary judgment on the basis that their inclusion as parties was improper and unnecessary because they had disclaimed any interest in the property.

On April 23, 2021, the trial court signed a final order, granting Ridgefield's traditional motion for summary judgment and denying Lil C's traditional motion for summary judgment and dismissing defendants "THUMBS UP LAND COMPANY, LTD., ET AL."[2] On April 30, 2021, the trial court signed an amended order, adding that Ridgefield "is vested with title and possession to a term 75% share of the Royalty, bonus and delay rental attributable to" the 36.2-acre tract, as well as "a term 100% of the executive rights attributable to the land . . . ."[3] This appeal followed.

---

[2] Lil C does not complain on appeal of the trial court's dismissal of all defendants other than Ridgefield.

[3] The trial court stated in its order that it did not rule upon Ridgefield's motion for no-evidence summary judgment.

6

## II. DISCUSSION

In three issues, Lil C argues: (1) the trial court erred in granting Ridgefield's traditional motion for summary judgment on a declaratory-judgment action when Ridgefield did not plead a claim for declaratory judgment, the judgment exceeded the relief requested by Ridgefield, the trial court lacked jurisdiction to grant declaratory judgment vesting title in the mineral estate in Ridgefield because the trespass-to-try-title statute is the method for determining title to real property, and Ridgefield failed to conclusively establish all elements of its quiet-title claim; (2) the trial court erred in denying Lil C's traditional motion for summary judgment on its claims for trespass to try title and quiet title; and (3) the trial court erred by granting Ridgefield's no-evidence motion for summary judgment because Ridgefield failed to identify the challenged elements of Lil C's claims.

### A. STANDARD OF REVIEW

We review the trial court's grant of a summary judgment de novo. *Sw. Bell Tel. L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). When the trial court considers competing summary judgment motions and grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered. *Id.*

Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When both parties move for summary judgment on strictly legal questions, each party "bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex. 1993); *Mandell v.*

7

*Mandell*, 214 S.W.3d 682, 687 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

A declaratory judgment rendered by summary judgment is reviewed under the same standards that govern summary judgments generally. *Hourani v. Katzen,* 305 S.W.3d 239, 248 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Lidawi v. Progressive Cnty. Mut. Ins.*, 112 S.W.3d 725, 729 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Declaratory judgment is not an appropriate remedy to resolve a purely factual dispute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003(a), 37.007; *see also Indian Beach Prop. Owners' Ass'n v. Linden,* 222 S.W.3d 682, 699–700 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Thus, a plaintiff who moves for summary judgment on a claim for declaratory relief must conclusively prove no genuine issue of material fact exists, and it is entitled to the requested declaratory relief as a matter of law. *See Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 565–66 (Tex. App.—San Antonio 2014, pet. denied); *Indian Beach Prop. Owners' Ass'n*, 222 S.W.3d at 699–700. Likewise, a defendant is entitled to summary judgment on a plaintiff's request for declaratory relief if the defendant disproves the plaintiff's entitlement to the declaratory relief as a matter of law. *See McCall*, 24 S.W.3d at 510–13, 516; *see also Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 691 (Tex. App.—San Antonio 2016, pet. denied).

If the appellate issue raised is based on undisputed and unambiguous facts, then the appellate court will review the trial court's award of declaratory relief and determine its propriety as a matter of law. *See Gramercy Ins. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Comm'rs Ct. of Titus Cnty. v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997)). The appellate court may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Gramercy*

*Ins.*, 47 S.W.3d at 724 (citing *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988)).

**B.    APPLICABLE LAW**

"A property owner's rights are often described as a bundle of rights, or a bundle of sticks." *Lightning Oil Co. v. Anadarko E & P Onshore, L.L.C.*, 520 S.W.3d 39, 48 (Tex. 2017). Landowners generally own the right to exploit the minerals under their land, "the mineral estate." *See Coastal Oil & Gas Corp. v. Garza Energy Tr.*, 268 S.W.3d 1, 15 (Tex. 2008); *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995). "The mineral estate is comprised of five severable rights: '1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments.'" *Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016) (quoting *French*, 896 S.W.2d at 797). The right to develop is a possessory right that gives the holder the exclusive right to possess, use, and appropriate the minerals in the real property. *Lightning Oil*, 520 S.W.3d at 49. The rights to receive bonus payments, delay rentals, and royalty payments are passive, non-possessory, non-executive rights to the proceeds from the production of minerals. *Hysaw*, 483 S.W.3d at 9; *see Luckel*, 819 S.W.2d at 463.

A property owner is free to retain all rights in a piece of real estate for himself or herself, or else sever the sticks from one another and distribute individual rights in whatever fashion or combination he or she so chooses. *Lightning Oil*, 520 S.W.3d at 48. An instrument conveying land in fee simple transfers both the surface estate and the mineral estate, unless the instrument contains a reservation or expresses a contrary intention. *Hysaw*, 483 S.W.3d at 8 (citing *Schlittler v. Smith*, 101 S.W.2d 543, 544 (Tex. 1937)).

## C.    TRESPASS TO TRY TITLE

We will first address the question of whether a declaratory-judgment action is available to resolve the dispute between the parties. We conclude that it is not.

"By statute, a trespass-to-try-title action 'is the method of determining title to lands.'" *Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021) (quoting Tex. Prop. Code Ann. § 22.001(a)). "Although related claims exist to determine narrower questions of possession, a cloud on a title, or a non-possessory interest, a trespass-to-try-title action is the exclusive remedy for resolving overarching claims to legal title." *Id.* at 832 (footnotes omitted).

> In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned.

*Id.* The substance of the plaintiff's pleadings determines whether a claim sounds in trespass to try title. *Id.*; *see also Offord v. Carson*, No. 01-19-00815-CV, 2021 WL 3358023, at *4 (Tex. App.—Houston [1st Dist.] Aug. 3, 2021, no pet.) (mem. op.) ("Texas courts consider the substance and not the form of the pleadings to determine whether an action is properly considered as one for declaratory judgment, trespass to try title, or to quiet title."). "A suit that seeks to resolve a title dispute is, in effect, an action in trespass to try title, whatever its form." *Brumley*, 616 S.W.3d at 836.

In recent years, the Texas Supreme Court has addressed distinctions between the various causes of action for settling questions related to title. *See Brumley*, 616 S.W.3d at 832–33; *Lance v. Robinson*, 543 S.W.3d 723, 735–37 (Tex. 2018); *Calvert v. Crawley*, No. 01-20-00105-CV, 2022 WL 1462799, at *18 (Tex. App.—Houston [1st Dist.] May 10, 2022, pet. filed) (mem. op.). In *Lance*, the Court held

10

the claimants could bring a declaratory-judgment action to establish rights to an easement, as opposed to the trespass-to-try-title statute, noting that an easement is a nonpossessory interest and the claimants did not assert any ownership or possessory interest in the disputed area. *Lance*, 543 S.W.3d at 736–37. The Court explained that the trespass-to-try-title statute is the proper procedural vehicle "when the claimant is seeking to establish or obtain the claimant's *ownership or possessory right* in the land at issue." *Id.* at 736 (emphasis added); *see Brumley*, 616 S.W.3d at 832 (noting that the trespass-to-try-title statute "embraces all character of litigation that affects the title to real estate").

### 1. The Trespass-To-Try-Title Statute Governs the Parties' Dispute

Here, Lil C's live pleading concerned ownership of the entire mineral estate, not just a nonpossessory right to a nonparticipating royalty interest, as it argues on appeal. In its live pleading, Lil C averred as to its declaratory-judgment claim that it sought "a declaratory judgment that Lil C Ranch *owns 100% of the mineral estate*, along with 100% of the royalty interest therefrom, in the 36.2-Acre Tract as the vested fee simple owner . . . ." (emphasis added). Lil C also asserted claims for trespass to try title and for suit to quiet title, with the substance of its lawsuit being that it was the owner of the mineral estate, instead of Ridgefield, because the reservation in the Hopper deed had expired. Lil C's prayer for relief asked the trial court to:

> issue a judgment confirming Lil C Ranch as the fee simple owner of the surface and mineral estate in the 36.2-Acre Tract; a judgment decreeing that Defendant Ridgefield has no rights or interest in the 36.2-Acre Tract, under the Mineral and Royalty Deeds or otherwise; judgment quieting title to Lil C Ranch and removing the Mineral and Royalty Deeds as a cloud to Lil C Ranch's title; in the alternative, a declaratory judgment as requested herein, with an award of attorney's fees and costs in Lil C Ranch's favor under Section 37 of the Texas Civil Practice and Remedies Code or other applicable provisions of

11

Texas law; and award Lil C Ranch all other relief at law or in equity to which it may be justly entitled.

Because Lil C's lawsuit concerned a dispute over the ownership of the entire mineral estate, which involves a possessory right, *see Lightning Oil*, 520 S.W.3d at 49, and Lil C sought to establish itself as the owner of the entire mineral estate, we conclude that the trespass-to-try-title statute is the sole cause of action available for that determination. *See Jinkins*, 522 S.W.3d at 786 ("Although resolution of these claims required construction of wills, the fact that the [Uniform Declaratory Judgments Act] might otherwise cover [the plaintiff's] claims does not mean his claim may be brought under the [Uniform Declaratory Judgments Act] if it must be brought as a trespass-to-try-title action."); *see also Calvert*, 2022 WL 1462799, at *18.

While it is true that Lil C sought a construction of the Hopper Deed, the real controversy—as alleged in both Lil C's live pleading and Ridgefield's petition in intervention—is the parties' continued dispute over ownership of the mineral estate in the 36.2-acre tract. *See Calvert*, 2022 WL 1462799, at *18. Here, by seeking to establish the mineral estate ownership, Lil C asserts ownership and a possessory interest in the disputed real property. *Cf. Lance*, 543 S.W.3d at 736–37 ("In seeking to establish alleged easement rights, the Robinsons do not assert any ownership or possessory interest in the disputed area."); *see id.* at 736 ("The trespass-to-try-title statute . . . only applies when the claimant is seeking to establish or obtain the claimant's ownership or possessory right in the land at issue."); *see also id.* at 736-37 ("A claimant who prevails on a claim to establish an easement cannot prevail on a trespass-to-try-title claim without also establishing title or a possessory right."). In substance and effect, Lil C sued for title to the mineral estate in the 36.2-acre tract, claiming it had superior title out of the common source (the Hopper deed) to that of Ridgefield. *See Brumley*, 616 S.W.3d

12

at 834–36. A claim of title by superior title to that of the defendant out of a common source is a dispute over title to land; thus, the method to resolve it is a statutory trespass-to-try-title claim. *Cf. id.*

Thus, notwithstanding that Ridgefield and Lil C sought a declaratory judgment, their dispute was in the nature of a trespass-to-try-title action and must be treated as such.[4] *See Martin v. Amerman*, 133 S.W.3d 262, 267–68 (Tex. 2004) (concluding that boundary dispute was governed by trespass-to-try-title statute); *Calvert*, 2022 WL 1462799, at *18 (concluding that dispute over ownership of real property pursuant to a settlement agreement was meant to determine title to the disputed properties and therefore the dispute was in the nature of a trespass-to-try-title action and not a declaratory-judgment action).

We conclude that the trial court erred when it granted Ridgefield a summary judgment on its declaratory-judgment claim because the parties' ownership dispute over the mineral estate can only be brought under the trespass-to-try-title statute. *See* Tex. Prop. Code Ann. § 22.001(a); *Brumley*, 616 S.W.3d at 831–32; *Lance*, 543 S.W.3d at 736–37. We sustain Lil C's first issue, which asserts the trial court erred when it granted summary judgment on the grounds asserted in Ridgefield's motion.

## E. Lil C's Motion For Summary Judgment

In its second issue, Lil C argues that the trial court erred in denying its traditional motion for summary judgment on its trespass-to-try-title claim and suit

---

[4] Lil C argued in its motion for summary judgment that the trespass-to-try-title action is the method for determining title to real property and the exclusive remedy by which to resolve competing claims to property. *See Sw. Bell Tel., L.P. v. Emmett*, z459 S.W.3d 578, 583 (Tex. 2015).; *see also* Tex. R. Civ. P. 166a(c); *Pioneer Energy Servs. Corp. v. Burlington Ins.*, No. 14-18-00879-CV, 2020 WL 6325958, at *4 (Tex. App.—Houston [14th Dist.] Oct. 29, 2020, pet. denied) (mem. op.).

to quiet title. In its motion for summary judgment and on appeal, Lil C argues that it is entitled to judgment as a matter of law on its trespass-to-try-title claim and its suit to quiet title because: (1) the lease covering the disputed tract, which includes a pooling provision, did not modify the reservation in the Hopper Deed; and (2) "two of the units which Ridgefield relies [on] to perpetuate the Mineral Reservation by pooled production exceed the pooling acreage limitations in the March 10, 2001 Leases[,] and the third pooled unit has not had uninterrupted production as required by the Mineral Reservation."

### 1. SUIT TO QUIET TITLE

"Over time, . . . the term 'quiet title' has acquired a colloquial meaning encompassing many kinds of title disputes, including those more aptly named as trespass-to-try-title actions." *Brumley*, 616 S.W.3d at 835. A suit to quiet title and a trespass-to-try-title claim are both actions to recover possession of land unlawfully withheld; a quiet-title suit is an equitable remedy whereas a trespass-to-try-title suit is a legal remedy afforded by statute.[5] *Lance*, 543 S.W.3d at 738–39.

Both an action of trespass to try title and a suit to quiet title require that a plaintiff establish superior title as an element of his or her claim. *Fricks v. Hancock*, 45 S.W.3d 322 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *see Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886); *Purple Martin Land Co., LLC v. Offord*, No. 14-20-00265-CV, 2021 WL 6069272, at *6 (Tex. App.—Houston [14th Dist.] Dec. 23, 2021, no pet.) (mem. op.); *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.). A plaintiff's right to recover in an action in

---

[5] A suit to remove a cloud from title is not the same, in substance or effect, as an action of trespass to try title, because the remedies originated in different ages of the history of the law; they were enforced in different tribunals and proceeded on widely different principles. *Haskins v. Wallet*, 63 Tex. 213, 218–19 (1885).

14

trespass to try title depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary. *Vernon v. Perrien*, 390 S.W.3d 47 (Tex. App.—El Paso 2013, pet. denied). "A suit to quiet title relies on the invalidity of the defendant's claim to the property and 'exists to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Ferrera v. Nutt*, 555 S.W.3d 227, 239 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)).

The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *Ferrera v. Nutt*, 555 S.W.3d 227, 239 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Accordingly, the elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Johnson*, 2011 WL 6938507, at *3.

## 2. ANALYSIS

In its live pleading, Lil C averred as to its suit to quiet title that:

> Ridgefield claims an adverse interest in the 36.2-Acre Tract pursuant to the invalid Mineral and Royalty Deeds. However, Lil C Ranch is the fee simple owner of the 36.2-Acre Tract pursuant to the Hopper Deed and the Mineral Reservation contained therein. As such, . . . Ridgefield has no right, title, or interest whatsoever in the 36.2-Acre Tract or any portion thereof.

Lil C argued that, "[c]onsequently, the invalid Mineral and Royalty Deeds in favor of . . . Ridgefield constitute a cloud on Lil C's Ranch's title to the 36.2-Acre Tract, and Lil C Ranch seeks a judgment . . . removing the Mineral and Royalty Deeds as a cloud on Lil C Ranch's title." Lil C prayed for "judgment quieting title to Lil C Ranch and removing the Mineral and Royalty Deeds as a cloud on Lil C Ranch's title . . . ."

However, Lil C did not establish as a matter of law that it is entitled to judgment on its claim to quiet title or its claim for trespass to try title because Lil C did not establish as a matter of law that Ridgefield's claim that it owned the mineral estate and seventy-five percent of the royalty was unenforceable or invalid or that the mineral reservation in the Hopper Deed had expired. Lil C argued at the trial court that the reservation in the Hopper deed could not be extended through production generated under a lease that contained a pooling provision when production did not actually occur on the 36.2-acre tract.

### a. The legal effect of pooling is to treat production as occurring on all tracts pooled.

Lil C argues that the trial court erred in denying its traditional motion for summary judgment on its trespass-to-try-title claim and suit to quiet title because Lil C conclusively proved that the pooling effectuated through the leases did not extend the mineral reservation in the Hopper Deed.

Mineral leases of multiple tracts may pool some or all of the tracts by combining them into a single unit, provided pooling is authorized by the leases. *Key Operating & Equip., Inc. v. Hegar*, 435 S.W.3d 794, 798 (Tex. 2014). The legal consequence of pooling is that production anywhere on the pooled unit and operations incidental to that production are regarded as taking place on each pooled tract. *See Key Operating & Equip.*, 435 S.W.3d at 798; *Se. Pipe Line Co. v.*

16

*Tichacek*, 997 S.W.2d 166, 170 (Tex. 1999).

When mineral interests are properly pooled, all interest holders in the pool are entitled to their proportionate share of the pool's production, regardless of where the well is drilled. *Samson Lone Star, Ltd. P'ship v. Hooks*, 389 S.W.3d 409, 431 (Tex. App.—Houston [1st Dist.] 2012) (op. on reh'g), *rev'd in part on other grounds*, 457 S.W.3d 52 (Tex. 2015). Once carved from the mineral estate, a royalty interest creates in the holder a simple right to payment of royalties derived from production of oil, gas, and other minerals corresponding to its respective mineral estate. *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 789–90 (Tex. 1995); *see also Benge v. Scharbauer,* 259 S.W.2d 166, 167–68 (Tex. 1953) (enumerating the various attributes of the mineral estate); *Arnold v. Ashbel Smith Land Co.,* 307 S.W.2d 818, 825 (Tex. App.—Houston 1957, writ ref'd n.r.e.) (noting non-participating royalty owner has no right to participate in "leases of the mineral estate to which the royalty is appurtenant").

As in this case, a royalty interest carved from its mineral estate may be pooled with other royalty interests that derive from other mineral estates. *See Aery*, 493 S.W.3d at 697–98. When effectuated through a cross-conveyance of interests, such a pooling results in a significant change in ownership of the respective royalty interests, as each member gives up full ownership and conveys to the other members a share of their royalty interests. *See Hooks v. Samson Lone Star, L.P.*, 457 S.W.3d 52, 62–63 (Tex. 2015); *Montgomery v. Rittersbacher*, 424 S.W.2d 210, 213 (Tex. 1968). After pooling, each member of the pooling agreement owns an undivided interest in the entire pooled unit typically in the proportion that each owner's contribution bears to the pooled unit. *Montgomery*, 424 S.W.2d 210; *MCZ, Inc. v. Triolo*, 708 S.W.2d 49, 52–53 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). While the pooling creates in each member an undivided royalty

interest in the land in the "block," these undivided interests are property rights that also can be freely acquired and conveyed. *See MCZ, Inc.*, 708 S.W.2d at 52–53.

Applying the "primary legal consequence" of pooling to this case—that production anywhere on a pooled unit is treated as production on every tract in the unit—we conclude that once pooling occurred, the pooled tracts, including the disputed 36.2-acre tract, no longer maintained separate identities. *See Key Operating & Equip., Inc.*, 435 S.W.3d at 799. The legal consequence of production from the pool in which the disputed 36.2-acre tract is located is that it is also considered production from the 36.2-acre tract. *See Hooks*, 457 S.W.3d at 62 ("The reason a lessor receives royalties under a pooling agreement, even if no production occurs directly on that lessor's tract, is because production elsewhere on the pooled unit is attributed to the lessor's tract. . . . It follows that a lessor's royalty on production from the unit as a whole reflects the lessor's royalty on production from its individual tracts in proportion to the size of the tracts relative to the overall unit.").

On appeal, Lil C argues that the pooling provision in the subject lease did not extend the reservation in the Hopper Deed because the pooling performed under the lease exceeded the limitations and regulations of the Texas Railroad Commission. However, Lil C did not raise this argument at the trial court, and thus, this argument cannot serve as a basis for summary judgment. *See* Tex. R. App. P. 33.1; Tex. R. Civ. P. 166a(c).

Because there is evidence showing that the tract subject to the dispute was pooled with other tracts, and there is evidence that production has continuously occurred in commercially paying quantities from the pooled tracts, we conclude that Lil C failed to establish as a matter of law that it was the owner of the royalty interest in the minerals. Thus, we conclude that the trial court did not err by

denying Lil C's traditional motion for summary judgment on its trespass-to-try-title claim and its suit to quiet title. We overrule Lil C's second issue.

## E.    NO-EVIDENCE GROUNDS

In its third issue, Lil C argues that the trial court erred by "failing to deny" Ridgefield's no-evidence summary-judgment motion. In its order, the trial court did not rule upon Ridgefield's motion for no-evidence summary judgment. However, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion, and that the trial court ruled upon the request, objection, or motion. Tex. R. App. P. 33.1(a). Here, Lil C did not argue in the trial court that the trial court erred by failing to deny Ridgefield's no-evidence summary-summary judgment motion. Because Lil C failed to preserve this argument for our review Lil C's third issue is overruled. *See id.*; *Jones v. Smith*, 157 S.W.3d 517, 524 (Tex. App.—Texarkana 2005, pet. denied) ("[T]he failure to obtain a ruling on the motion for summary judgment has not preserved any error for our review."); *see also In re Freeport LNG, LLC*, No. 01-21-00701-CV, 2022 WL 2251649, *1–2 (Tex. App.—Houston [1st Dist.] June 23, 2022, orig. proceeding) (mem. op.) (per curiam) (granting mandamus relief because "trial court had a legal duty to perform the nondiscretionary act of ruling on the pending Summary Judgment Motion and it failed or refused to do so within a reasonable time").

## F.    SUMMARY

We conclude that neither party established its right to summary judgment as a matter of law and that the trial court erred when it granted Ridgefield's summary judgment motion. We affirm in part the trial court's judgment denying Lil C's motion for summary judgment. We reverse in part the trial court's judgment

granting Ridgefield's traditional motion for summary judgment and render judgment denying the motion. *See Emmett*, 459 S.W.3d at 583.

### III. CONCLUSION

Having affirmed the trial court's judgment in part and reversed and rendered in part, we remand the case for further proceedings.


/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Zimmerer, Spain, and Poissant.